JOHN DEERE, Plaintiff in Error, *v.* JAMES CHAPMAN, Defendant in Error.

ERROR TO ROCK ISLAND.

The homestead act is a remedial act, and will be so construed.

The owner of an estate in a lot and dwelling house occupied by him, need not own an estate in fee to receive the benefit of the homestead laws—a less estate will protect him.

ON January 21st, 1861, the plaintiff in error filed in the Rock Island Circuit Court his declaration in ejectment against the defendant in error, for lot 12, block 1, Atkinson's addition to the village of Moline, claiming therein an estate for the life of the defendant, and alleging himself to have been in possession December 1, A. D. 1860, and that defendant entered, etc., on the day following.

To the declaration was the notice required by law in due form, and an acceptance of service thereof by the defendant.

The rule to plead within twenty days was entered.

January 23rd, 1861, defendant in error filed the usual plea.

A trial was had before the court without a jury, and the court found the issue for the defendant, and gave judgment against the plaintiff for costs.

E. T. WELLS, for Plaintiff in Error.

CHAPMAN & JACKSON, for Defendant in Error.

BREESE, J. The "homestead act" provides, that in addition to the property exempt by law from sale under execution, there shall be exempt from levy and forced sale, the lot of ground and the buildings thereon, occupied as a residence, and owned by the debtor, being a householder and having a family, to the value of one thousand dollars. (Scates' Comp. 576.)

The question arises upon the definition to be given to the word "owner."

The appellant contends that the words of a statute, when unambiguous, as in this statute, should be taken in the ordinary, natural and most commonly received sense, and so taking the word "owner," it conveys the idea of absolute property, and nothing less. He cannot conceive, that a thing should be owned by one person, and also that another should have a title to it, for although different interests in the same subject matter may be owned by different persons, yet to the thing itself there can be but one title and one owner. He also contends, that if there be room for construction, such a statute as this, giving new rights and immunities, and of doubtful policy, ought not, thereby, to be extended beyond the plain import of the terms used, and that this statute, being in derogation of the common law, should be construed strictly as against those seeking advantage of it.

We fully agree with the appellant, that where the words of a statute are clear and unambiguous, they must be taken in their ordinary, natural and most commonly received sense, and that statutes in derogation of the common law, not clearly remedial in their nature, should be construed strictly as against those seeking their benefits.

But are the words of this statute so clear and unambiguous as to forbid construction? Is it certain the legislature intended by the term "owner," to embrace only the absolute owner of the fee? The law recognizes more than one description of ownership, both in real and personal property. There may be an absolute ownership, and a qualified ownership of both descriptions of property, and the one is as fully recognized as the other.

It is true, a fee simple estate is the highest estate in land, known to the law, yet he who owns it is no more favored in the law, than he who owns a freehold of less extent, as an estate in tail—for one's own life or the life of another—by the courtesy—or in dower. The owner of a life estate in land, if in possession, has as complete dominion over it as the absolute owner of the fee, has over his estate in possession. He is the lord and master, during the continuance of his term, and can and must sue for all injuries to it, or trespasses upon it, he in reversion, or the owner of the fee, having no right to such action, and being himself subject to the action of the owner of the life estate, if he trespasses upon him. Such an estate can be sold on execution, under our general execution law, it being a tenement and real estate, and we would say, that a fair construction of the homestead act, with reference to the objects and purposes to be accomplished by it, would embrace within it the estate which the debtor might own in the lot and buildings thereon, and occupied as a residence, and which could be sold on execution. The object of the law, most clearly is, to secure the head of the family in the possession and enjoyment of the lot and buildings, for the maintenance and shelter of himself and family as a home, without any special regard to the extent of the estate, or title by which he owned it. Owning an estate for his own life, in the premises, the home of his family, we do no violence to the language of the act, by considering him the owner for all the purposes of the act, and the property vesting in him as owner, according to the nature and extent of his estate. He is, to all intents and purposes, the owner of the immediate freehold and seized thereof, and as such, must be protected by the homestead act, and this is neither a liberal nor forced definition of the word owner. It seems to us to be its most natural meaning, regarding, as we must, the purposes and object of the act.

Though this act may be said to be in derogation of the common law, and an innovation upon all former relations between creditors and debtors, giving to the latter new rights and immunities, yet it does not follow, that it should not receive a construction so liberal, as to advance the object contemplated by the legislature in passing the act. We regard the statute as remedial in its nature—intended to remove grievances under which the unfortunate labored, and to save them, amid all their losses and disasters, a shelter for the family—a home. Being remedial, it must be so construed as most effectually to meet the benevolent end in view, without departing, however, from the plain and obvious meaning of the language used in the act. We think we have not done so, in defining the word own-

er,—that the clear legal import of that word embraces, as well the owner of a life estate in land, as the owner of the fee therein.

The statute to which appellant has referred, chapter 105, to punish trespassers for cutting timber, which provides that the penalties provided in it, shall be recoverable by an action of debt in the name of the owner, and the decision of this court thereon, that to entitle a person to recover these penalties he must show title in fee to the land, cannot bear upon this case, as that statute is highly penal in its character, and must be construed strictly for all purposes. This, on the contrary, is of a beneficent nature, and a different rule must prevail, one that will advance the remedy, without doing violence to the language used.

Without any strained or forced construction of any of the words used in the act, we are satisfied, the legislature never contemplated that the owner of an estate in a lot and dwelling house occupied as his residence, should own an estate in fee—a less estate will protect him. Why, it might be asked, did the plaintiff levy upon, sell and become the purchaser of this lot, and bring his ejectment for the possession, if the defendant did not own the property? Had he succeeded in his ejectment suit, would he not have been put in possession and have become *quo ad hoc*, the owner?

The judgment must be affirmed.          *Judgment affirmed.*