## HOWARD Z. CULVER

*v.*

## THE THIRD NATIONAL BANK OF CHICAGO.*

1. PLEADING—*carrying demurrer to plea to defective counts in the declaration.* Where the general issue has not been pleaded, a demurrer to a special plea can usually be carried back to the declaration, and the judgment of the court had upon the declaration; and if that is bad, judgment

*This and the two cases following were unavoidably omitted in the reports of the terms to which they respectively belong.

Syllabus.

will be rendered against it, on the principle that judgment will be rendered against the party committing the first error in pleading.

2. But where a demurrer to the declaration has been overruled, and the general issue pleaded, a demurrer to a special plea can not be carried back to the declaration, for the reason that a party can not plead and demur to the same pleading at the same time.

3. SAME—*substantial defects in declaration—how taken advantage of.* Substantial defects in a declaration can always be taken advantage of by motion in arrest of judgment, or on error.

4. STATUTES—*repeal by implication.* If two statutes are clearly repugnant to each other, the one last enacted operates as a repeal of the former; and a subsequent statute revising the whole subject of a former one, and intended as a substitute for it, operates as a repeal of the former one, although it contains no express words to that effect.

5. SAME—*act of 1849 relating to corporations, wholly repealed by act of 1857.* The act of 1857, by implication, has repealed the act of 1849 entitled "An act to authorize the formation of companies for manufacturing, agricultural, mining or mechanical purposes," the later act relating to the same subject, and being intended, with another act, as a substitute for the former one.

6. CORPORATION—*liability of stockholders to creditors is primary, not secondary.* Under the act of 1857 relating to the formation, etc., of private corporations, the liability of stockholders to creditors of the company is not dependent upon a suit against the company and inability to collect it, but such stockholders are primarily liable.

7. SAME—*declaration—sufficiency of averment as to the time when defendant became stockholder.* Where the defendant, as a stockholder of a private manufacturing corporation, was sought to be made liable, to the extent of his unpaid stock, for debts of the company contracted in the summer of 1867, the declaration averred that he became a stockholder at some time anterior to the first of December, 1868: *Held,* that, under this averment, proof was admissible to show that the defendant was a stockholder at the time the debt sued for was contracted; and that the declaration, in this respect, was good after verdict.

8. SAME—*remedy against stockholders, whether in equity or at law.* As the statute relating to the formation, etc., of private corporations, creates a legal liability upon stockholders, to a certain extent, for the debts incurred by their company, such liability is cognizable in a court of law, an implied promise being inferred from a legal liability.

9. EVIDENCE—*copies in books of corporation admissible against stockholders.* In a suit against a stockholder of a manufacturing company organized under the act of 1857, to charge him for the payment of a debt incurred by the company, the court admitted in evidence a copy of the

34— 64TH ILL.

license recorded in the books of the company, to prove the incorporation of the company, which was objected to as secondary evidence: *Held*, that the books containing the record of the license, being a record of the company, was binding upon the stockholders, and was properly admitted in evidence.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Messrs. JONES & GARDNER, and Mr. M. W. FULLER, for the appellant.

Messrs. WALKER, DEXTER & SMITH, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was an action of assumpsit, in the Superior Court of Cook county, brought by the Third National Bank of Chicago, claiming to be a creditor of the Northwestern Glass Company, against Howard Z. Culver, alleged to be a stockholder in that company.

It is agreed there are many other suits depending on the decision of this, and we have, therefore, given it careful consideration.

It is claimed by appellee that the action is brought on the liability imposed by the ninth section of "An act to authorize the formation of corporations for manufacturing, mining, mechanical or chemical purposes," in force February 18, 1857, which is as follows: "All the stockholders of every such company shall be severally individually liable to the creditors of the company to an amount equal to the amount of stock held by them respectively, for all debts and contracts made by such company prior to the time when the whole amount of its capital stock shall have been paid in and a certificate thereof made and filed as hereinafter required." Session laws 1857, p. 163.

The indebtedness declared on was evidenced by four promissory notes, alleged to have been executed by the glass company to Ira Holmes, cashier of the Third National Bank, and

by him indorsed to the bank, and were given for money loaned by the bank to the glass company.

There was a general demurrer to the declaration, which was overruled. The general issue was then pleaded, and a special plea, averring that the notes sued on were not, nor was either of them, executed in the manner alleged in the declaration, which plea was accompanied by an affidavit of defendant, that he had a defense on the merits, and that the matters in his second plea contained were true as therein stated.

Plaintiff then took leave to amend the declaration, which he did by adding the following:

"That on or before the date of the said two notes last above mentioned, respectively, the said plaintiff, at the special instance and request of the said Northwestern Glass Company, advanced in loans to the said company, to wit, the several sums of money in said last two notes respectively mentioned, and in consideration thereof, and for the purpose of securing the payment of the said several sums of money so loaned and advanced, and the said two notes respectively mentioned by the said Northwestern Glass Company to the said plaintiff, the said company executed the said two notes last above mentioned, in manner aforesaid, and delivered the same to the said cashier of the plaintiff, as hereinbefore mentioned."

A demurrer was put in to the second plea, which was sustained, and the cause went to the jury on the general issue, and there was a verdict and judgment for the plaintiff, a motion for a new trial, and in arrest of judgment, having been overruled.

To reverse this judgment, the defendant appeals, and makes on the record several points which we will notice.

Some question is made between the parties as to the right to carry a demurrer to a plea back upon the declaration. Where the general issue has not been pleaded, a demurrer to a special plea can, usually, be carried back to the declaration,

532   CULVER *v.* THIRD NAT. BANK OF CHICAGO. [Sept. T.,

Opinion of the Court.

and the judgment of the court had upon the declaration, and if that is bad, judgment will be rendered against it, on the principle that judgment will be rendered against the party committing the first error in pleading.

It has been oftentimes ruled by this court that, where a demurrer has been overruled and the general issue pleaded, a demurrer to a special plea can not be carried back upon the declaration. *Wear* v. *Jacksonville and Savannah R. R. Co.* 24 Ill. 593.

The court was called upon to review this doctrine in *Wilson, for the use, etc.* v. *Myrick,* 26 ib. 34, and said, we are now prepared to adhere to the rule laid down in the above case as being well supported by authority and most consistent with the philosophy of pleading; and further said, if the declaration be so defective that it will not sustain a judgment, that may be taken advantage of on a motion in arrest of judgment or on error.

The "philosophy" of the doctrine is that you can not plead and demur to the same pleading at the same time. The same doctrine was announced in *Schofield* v. *Settley et al.* 31 ib. 515; *Ward* v. *Stout,* 32 ib. 399.

In a previous case (*Brawner* v. *Lomax,* 23 ib. 496), where this point arose, the court said the record would present a strange appearance, if, after a demurrer to the declaration has been overruled and the general issue pleaded, a demurrer to a defective plea should be carried back to the declaration. The record would not look well with a general demurrer to a declaration overruled, and then carried back over the general issue, when filed to a defective special plea.

But of innate and substantial defects in the declaration, advantage can always be taken by motion in arrest of judgment or on error, as was said in *Wilson* v. *Myrick, supra.*

A motion in arrest of judgment was entered in this case and overruled, and this is one of the errors assigned; and the point made is, that under the law making a stockholder liable, his liability does not attach unless a suit for the collection

of the debt due by the company in which the defendant was a stockholder shall be brought against the company within one year after the debt became due.

This raises the question, and is the one first made by appellant: is the 23d section of the act of February 10, 1849, in force?

That is an act entitled "An act to authorize the formation of corporations for manufacturing, agricultural, mining or mechanical purposes."

Section 23 is as follows: "No stockholder shall be personally liable for the payment of any debt contracted by any company formed under this act, which is not paid within one year from the time the debt becomes due, unless a suit for the collection of such debt shall be brought against such company within one year after the debt became due; and no suit shall be brought against any stockholder who shall cease to be a stockholder in any such company, for any debt contracted by said company, unless the same shall be commenced within two years from the time he shall have ceased to be a stockholder, nor until an execution against the company shall have been returned unsatisfied, in whole or in part." Scates' Comp. 761.

It is insisted by appellant that the declaration does not bring the case within the provisions of this section, and consequently no recovery can be had against him.

To this, it is replied by appellee that this section is not in force, it having been impliedly repealed by the act of February 18, 1857.

On this question this controversy mainly depends.

Appellant insists that, as the act of 1857 contains no repealing clause, no part of the act of 1849 is repealed, except so far as it may be inconsistent with, and repugnant to, the act of 1857, and that section 23 is not repugnant and inconsistent, and is, therefore, in full force.

He further insists that these acts are *in pari materia*, and must be construed together; and if so held and so construed,

the section in question remains in force.    The question has a wider range.

It is a familiar principle, if two statutes are clearly repugnant to each other, the one last enacted operates as a repeal of the former. (Dwarris on Statutes, 673.)    There is, however, another principle which must settle this question, and that is, a subsequent statute revising the whole subject of a former one, and intended as a substitute for it, although it contains no express words to that effect, operates as a repeal of the former. *Bartlett* v. *King*, 12 Mass. 537; *Towle* v. *Mavett*, 3 Greenleaf R. 22; *Nichols* v. *Squire*, 5 Pick. 168.    These cases are cited in the case of *The Board of Trustees of Ill. and Mich. Canal* v. *The City of Chicago*, 14 Ill. 334, with approbation, and such will be found the doctrine of all the books.    The case cited by appellant (*Dugan* v. *Gittings*, 3 Gill, 138) holds that a later statute on a given subject, not repealing an earlier one in terms, is not to be taken as a repeal by implication, unless it is plainly repugnant to the former, *or* unless it fully embraces the whole subject matter.

It is, then, only necessary to inquire if the act of 1857 is upon the same subject as the act of 1849.    Of this there can be no dispute.

The act of 1849 was passed immediately on the adoption of the constitution of 1848, in conformity to that clause of the constitution which provides that corporations not possessing banking powers or privileges may be formed under general laws, but shall not be created by special acts, except for municipal purposes, and in cases where, in the judgment of the general assembly, the objects of the corporation can not be attained under a general law.    Art. 10, sec. 1.

The act of 1849, it will be perceived, embraced corporations for agricultural purposes, as well as mechanical, mining and manufacturing purposes, but not for chemical purposes. In 1855, the general assembly passed a general incorporation act for agricultural and horticultural purposes, giving to all such associations all the powers deemed necessary to effect

the objects of their incorporation.    It provided a complete scheme.

In 1857, the whole subject of incorporations, for these various purposes, came before the general assembly for revision.    They then had the subject fully before them, and, having provided by the act of 1855 for corporations for agricultural purposes, they omitted that subject from the act, and embraced within it incorporations for chemical purposes, as the title and body of the act shows, which the act of 1849 did not embrace.

It would follow, therefore, that parties desiring to associate for agricultural or horticultural purposes, must associate under the act of 1855, whilst those having manufacturing, mining, mechanical or chemical purposes in view, would associate under the act of 1857; and under this act it is alleged, and not denied, appellees did effect their incorporation.    Now, this act is substantially, in most of its important provisions, the same as the act of 1849, the 10th section of the latter act, providing for the personal liability of the stockholders, being almost identical in terms with section 9 of the act of 1857, the effect of the same being to make the stockholders primarily liable, to the extent therein provided, to the creditors of the company in which they are stockholders, whilst the collateral liability contemplated by the 23d section of the act of 1849 is entirely omitted.

There may have been very good reasons why the legislature should have insisted upon the primary liability of the stockholders, as such associations, in the incipiency of their proceedings, as well as in their future operations, might need credit, and the experience of eight years might have shown, if the liability of the stockholder was only secondary, the necessary credit to carry on their operations could not be obtained; and whilst this was the demand of the law, that the stockholder should be primarily liable, neither party could be placed at disadvantage.    The capitalist, before loaning his money to one of these corporations, would be apt to

inquire who were the stockholders, and their responsibility. The stockholder, or one proposing to become such, would be on his guard, as he was made primarily liable as to the extent of his investment, and by whom it was to be managed and controlled.

We can not doubt that this act of 1857, under which the glass company was incorporated, was intended by the legislature as a substitute for the act of 1849, they, at the time, having the whole subject fully before them. This being so, the stockholders are primarily liable by section 9 of that act.

Another reason operating with the general assembly for revising the act of 1849, and substituting the act of 1857 therefor, may be found in the fact that the last section of the former act placed incorporations formed under it in the control of the general assembly, giving them power to repeal the act by which they were incorporated, and to amend and repeal the incorporation itself. Experience under this act had, doubtless, informed the legislature that stock in corporations thus exposed to legislative interference was not an object of desire or calculated to call into active association the capital of the country ready for such investments, and thus impressed, this clause was omitted from the act of eighteen hundred and fifty-seven.

That act is full and comprehensive, and all the functions necessary for such corporations to exercise are freely contained. It presents a complete plan in itself, and can be regarded in no other light than as a substitute for the act of 1849. That act appears to have been thoroughly revised, and the result was the act of 1857. In addition to the cases cited, *Sacramento* v. *Bird*, 15 Cal. 294, and *Pulaski County* v. *Downer*, 5 English, 588, may be referred to.

We do not think an argument of much weight against the view we have taken can be drawn from the fact that the general assembly, on the same day of the passage of the act of 1857, passed an act authorizing all companies incorporated or

to be incorporated under the act of 1849, to sue for and collect instalments or subscription to stock due or to become due to the companies formed under that act. It may be admitted this act amounts to a legislative recognition that the act of 1849 was in force February 18, 1857, but only for a specified and limited purpose. Had the statute been repealed in positive terms, the legislature could, doubtless, have provided for the collection of these subscriptions.

We do not think it can be claimed that, under sec. 1 of art. 10 of the constitution of 1848, the legislature would enact more than one general law to accomplish one and the same purpose. That would produce great confusion. Nor was it contemplated by that section. As we think, the act of 1857 was intended as a substitute for the act of 1849, and all incorporations, for the purposes indicated in it, organized under it, are subject to no other liabilities than therein imposed.

Since, then, section 23 of the act of 1849 has no place in the act of 1857, it follows the liability of appellant was primary, under section 9, and the declaration, declaring upon his liability as such, was good. A good cause of action was shown, and the motion in arrest of judgment was properly overruled.

It is further urged by appellant, that the declaration is defective, in not averring that appellant was a stockholder at the time the debt of the glass company to the bank was created.

No precise time is alleged in the declaration when appellant became a stockholder, but it is averred that he so became at some time anterior to the first of December, 1868, leaving a margin broad enough to admit proof that he was such stockholder at the time the debt accrued, in 1867. Under this averment proof would be admissible that appellant was a stockholder at the time the debt was contracted. Without such proof, it is not to be presumed the jury would have found as they did, as it was an important element in the plaintiff's case. The declaration, in this respect, must be held good after verdict. 1 Ch. Pl. 673, 679.

Another objection made by appellant is, that the court admitted secondary evidence of the license issued, to prove this corporation.

The license, it appears, was recorded in the books of the company, and was proved by producing the books.   Being a record of the company, it must be held binding upon the ·stockholders.

It is further objected that the verdict does not specify the indebtedness of the company.   A jury is not bound to state the facts on which their verdict is found.   They could not, in this case, have found the verdict they did find without finding the fact of indebtedness equal in amount to the verdict rendered.

It is further objected by appellant that the liability of the stockholders, under the 9th section, can only be enforced in equity.

This section creates a legal liability, and of course cognizable in a court of law.   An implied promise arises out of this liability.   It is no objection that the stockholder may be subjected to several suits, as he can, in no event, be answerable for more than the amount of his stock.

The case of *The Poughkeepsie Bank* v. *Ibbotson,* 24 Wend. 473, is a case in point upon a similar provision in a statute of New York, and so is *Garrison* v. *Howe,* 17 N. Y. 458. .

· In *Dozier* v. *Thornton,* 19 Georgia, 325, which was an action against a stockholder in a bank, who was subject to this liability, it was held, the creditor was not restricted to any form of proceeding to enforce his rights.   He may proceed in equity or at law ; and if at law, he may elect any form of action appropriate to such a case, which he may deem most convenient and advantageous to himself.

We have examined the second instruction asked by appellant and refused, and are of opinion it was properly refused, as the legal existence of the corporation was not presented by the issue upon which the cause was tried.

On a careful examination of the record, we are of opinion there is no error in it, and the judgment must be affirmed.

*Judgment affirmed.*

Mr. JUSTICE McALLISTER, dissenting: The ground of the opinion of the majority of the court is, that the act of 1849, which specifies the conditions upon which stockholders are to be made liable for the debts of the corporation, is, by the act of 1857, repealed by implication; that the latter act is a re-casting of the whole subject, and, instead of being construed as *in pari materia* with the former, should be held a repeal of it by implication. With all deference, I insist that there is a single circumstance which renders the rule invoked and applied by the court wholly inapplicable.

If the legislature had expressly said, in the act of 1857, that it should not be deemed to have any such effect, and that the act of 1849 should be regarded as in force, no court, it seems to me, would be willing to hold that the act of 1849 was, nevertheless, repealed by implication.

Now, the legislature did what, in my judgment, is equivalent to making that declaration.

On the same day of the passage of the act of 1857 relied upon as repealing that of 1849, an act was passed as follows:

"It shall be lawful for all companies formed and incorporated, or *which shall hereafter be incorporated* under the provisions of ' An act to authorize the promotion of companies for manufacturing, agricultural, mining or mechanical purposes,' approved February 10, A. D. 1849, to sue for and collect any instalment or subscription to stock due or *to become due* to *said* companies formed under said act, in like manner as other debts are now collected, and before any court having jurisdiction of the amount claimed." It is declared to be a public act.

This act refers to that supposed to be repealed with absolute correctness. It expressly recognizes its existence. It clearly and unmistakably contemplates its future continuance

and the subsequent formation of corporations under its provisions. As to that, it seems to me there can be no difference of opinion. The language employed: " or which *shall hereafter be incorporated under the provisions* of an act, etc." is too clear and unambiguous to be disregarded.

The case, then, is this : Here are three statutes relating to substantially the same subject, one of which was passed the 10th of February, 1849, and two others on the 18th day of February, 1857. One of the latter two expressly refers to the act of 1849, recognizes its existence and provides a remedy not only for companies which had been theretofore incorporated, but for such as should *thereafter* be incorporated under the provisions of the act of 1849 ; the other of the two makes no reference whatever to the act of 1849, and yet it is held by the majority of the court that the act of 1857, which makes no reference to that of 1849, repeals the latter by implication.

Did the act of 1857, which makes no reference to that of 1849, repeal the other one which was passed on the same day, and which expressly refers to it, and recognizes its continued existence? If so, by what rule of construction is such a result obtained? It seems to me that these three acts should be construed as *in pari materia.*

It may be said that the construction given by the majority of the court tends to the promotion of justice. That may be so, and it may not be so. There may have been numerous corporations organized under the act of 1849, since the passage of the acts of February, 1857, invited thereunto by the very terms of the act above quoted ; large sums of money may have been invested in and important interests arising out of them. The parties to such organizations must now find themselves deceived. The act which they supposed to have been continued by the expression of the legislative will I have referred to, proves to be a nullity ; their organizations are naught, and their rights and interests thrown into confusion.

For these reasons, I am compelled to dissent from the opinion of the majority of the court.

Mr. JUSTICE WALKER: I concur in the views expressed in the foregoing dissenting opinion, and, for the same reasons, dissent from the opinion of the majority of the court.