GEORGE MURDOCK, Appellant, *v.* MARGARET DALBY, Respondent.

November 28, 1882.

1. HOMESTEAD. — There may be a homestead in a life estate.

2. —— DOWER. — A widow may acquire a homestead out of a dower interest before the dower has been set apart.

3. —— EXEMPTIONS. — Such a homestead is not subject to attachment or to the levy of an execution on an indebtedness which accrued prior to the setting apart of the dower.

4. EXEMPTIONS — HEAD OF A FAMILY. — A widow, living in her own house with only her servants, is not the head of a family within the meaning of the statute.

APPEAL from the St. Charles Circuit Court, EDWARDS, J. *Reversed and remanded.*

T. F. McDEARMON and W. A. ALEXANDER, for the appellant: A homestead interest under the statute is a fee simple. A larger estate cannot be carved out of a smaller. The respondent had only a life estate. — Rev. Stats., sect. 2693; *Skouten* v. *Wood,* 57 Mo. 380; *Jackson* v. *Bowles,* 67 Mo. 609; *Poland* v. *Vesper,* 67 Mo. 627. The homestead interest — if any can exist in a dower interest — can vest only after the dower was set apart. Such homestead right, therefore, if any existed, was subject to sale under execution by the express provisions of the Homestead Act. — Rev. Stats., sect. 2695; *Farran* v. *Quigley,* 57 Mo. 284; *Stivers* v. *Horn,* 62 Mo. 473. The homestead is a statutory right, a strictly legal right, and equitable principles other than those recognized by the act cannot be invoked by one claiming the homestead right. — *Casebolt* v. *Donaldson,* 67 Mo. 308. The respondent was not the head of a family. — Rev. Stats., sect. 2343.

C. DAUDT and BENJ. EMMONS, JR., for the respondent: A widow who occupies a homestead as a residence is the head of a family. The fact that her children have left her

does not deprive her of her homestead rights. — *Vogler* v. *Montgomery*, 57 Mo. 583; *Brown* v. *Brown*, 68 Mo. 388; *Bunnell* v. *Hayes*, 20 Law Reg. 751. A life estate will support a homestead. — Thomp. on Home. & Ex., sect. 174; Smyth on Home., sect. 114; *The State ex rel.* v. *Diveling*, 66 Mo. 375.

THOMPSON, J., delivered the opinion of the court.

This is an action of ejectment upon a sheriff's deed. The case was tried by the court without a jury, and judgment was rendered for the defendant. No exceptions were taken to the admission or exclusion of evidence, and no declarations of law were asked for or given. The substantial question for us to consider, therefore, is, whether the judgment was one which could properly be given under the pleadings and the evidence. *McEvoy* v. *Lane*, 9 Mo. 48. As there was no substantial conflict in the evidence, we have no difficulty in determining whether the judgment which was rendered was the judgment which properly should have been rendered.

The evidence shows that several judgments were rendered against the defendant in 1876, upon which executions were issued; that under one of these executions the land in controversy was laid off to the defendant as a homestead and an exemption in lieu of personalty. This land consisted of two tracts: First, a tract of 31.45 acres; and, secondly, an adjacent lot or tract of 3½ acres. The former tract, in a proceeding for partition and dower between the Life Association of America and this defendant in 1878, was set apart to her as her dower interest in the lands of her deceased husband, Thomas Lindsay; and under the execution spoken of, the commissioners found it to be of the value of $1,500, and set it apart to her as her homestead. This exhausted the limit of value of the homestead exemption allowed by law. She then claimed an exemption in lieu of personalty under sections 9 and 11 of chapter 55 of Wagner's Stat-

utes (now Rev. Stats., sects. 2343 and 2346), in an adjacent tract held by her in fee, and in lieu of such exemption, the commissioners set out to her three and a half acres of this tract, of the appraised value of $300.

These proceedings took place in April, 1878, under four executions in favor of different plaintiffs against this defendant. Notwithstanding these proceedings, *pluries* executions upon the same judgments were sued out ; were levied on both of these tracts ; and they were sold by the sheriff to the plaintiff, who was plaintiff in one of the executions, for the sum of $25. Under the sheriff's deed, which the plaintiff received, he seeks now to recover both tracts. The defence is, that the larger or dower tract is the homestead of the defendant, and that she is entitled to claim the smaller tract as an exemption in lieu of personal property, under the statute under which it was thus set out to her.

The defendant is a widow about sixty-eight years old. She was the wife of Thomas Lindsay, who died in 1841. He left the premises of which these are a part, paid for in part only, a house commenced, but unfinished, and left also to this defendant five children to support and educate. It appears that she paid for the land, and lived on it with her family until 1853, when she married Mr. Dalby, a Methodist clergyman. They then moved about from place to place in Illinois and Iowa, wherever his ministry took him, until about the year 1863, when they returned and lived for a time on a farm which Mr. Dalby owned in St. Charles County, on the Mississippi River. About this time — it is not necessary to be precise as to dates — William T. Lindsay, a son of Mrs. Dalby, returned from California and took charge of the farm, which embraced the premises in controversy. Mr. Dalby died in 1867, while temporarily at the place in controversy visiting his step-son, Mr. Lindsay, but while he and this defendant resided on his farm, just spoken of. After his death the defendant stayed upon his farm for awhile, and then came to the place in controversy to live

with her son William, to whom she had leased it for a term of two or three years. In this state of things William died on the place in 1875, and Mrs. Dalby was left there alone. She has continued to reside upon it ever since, with no other family than a hired man, or perhaps, more properly speaking, a tenant or farm agent, who lives in her house, and for whom she keeps house, and also a negro boy whom she took from the poor house, and employs and keeps as a domestic servant, though not under any contract of apprenticeship. The house is a log house, containing but two substantial rooms. Upon this small tract of ground, and in this humble residence, this aged lady supports herself by selling a little butter and eggs to dealers in St. Charles.

1. Now, what are the grounds upon which we are asked to say, that she cannot claim the dower tract as her homestead?

It is contended that she cannot claim a homestead in this tract, because her estate in it is but a life estate — a dower interest. This point is clearly not well taken. Although the homestead in this state is a fee simple interest, where the estate which supports it is an estate in fee (*Skouten* v. *Wood*, 57 Mo. 380), yet there may be a homestead reservation in a life estate, as well as in a fee simple estate. Thomp. on Home. & Ex., sect. 174; *Deere* v. *Chapman*, 25 Ill. 610; *Potts* v. *Davenport*, 79 Ill. 456.

But it is said that, as the dower of Mrs. Dalby was not set apart until after the judgments were recovered under which her interest in the land was sold to the plaintiff, she could not, as against these judgments, acquire a right of homestead in her dower interest by a subsequent admeasurement of dower. We do not agree with this view. Our statute relating to homesteads contains this provision: "Such homestead shall be subject to attachment and levy of execution, upon all causes of action, existing at the time of the acquiring such homestead, except as herein otherwise provided." Rev. Stats., sect. 2695. The exceptions re-

ferred to need not be noticed, because they do not apply to the case before us. We understand the plaintiff's position to be substantially this : That, whereas, Mrs. Dalby's life interest by way of dower, which she now claims as her homestead, was not set apart to her until about two years after the rendition of the judgments, under which the sheriff's sale at which the plaintiff purchased took place, she is therefore to be deemed to have "acquired such homestead" subsequently to the accruing of the causes of action against which she now sets it up. We do not take this view of the meaning of the statute ; though if the question were reasoned upon strictly technical grounds, this conclusion might be arrived at. An unassigned dower interest is not a vendible estate. It cannot be transferred by deed as a distinct estate, separate from the fee ; nor can it be levied upon, and sold under an execution. It may be released, by the wife joining, in the statutory mode, in a deed of her husband conveying the land; but it is not here conveyed as a distinct estate, or interest ; it is merely released in order that it may become united with the fee in her husband's grantee. It follows that, where a widow claims a homestead exemption in land, which has been previously set apart to her as dower, it cannot be said, in a strict sense, that she "acquired such homestead" until the land was so set apart to her.

But the homestead law is founded in a policy which must constantly be kept in view in determining its construction. It creates an estate or interest in land in favor of housekeepers and heads of families, which is as much a favorite of the law as dower has been in times past. This is clearly shown by the whole course of decisions, in this and other states, upon the construction of such statutes. This policy will not allow the beneficial purposes of the statute to be frittered away, by a strict and technical construction. Can it be supposed that those who enacted the section of the statute, from which we have just quoted, ever imagined for

a moment that a court of justice would so construe it, as to deny its protection to a widow during the time she might live in the family mansion before the assignment of her dower? No one can think so. The question is presented in this case, in a peculiar phase, such as is seldom likely to arise; for here there did not descend to this widow and her children, a vested estate of homestead in fee simple, in lands which her first husband had held in fee, because he died long before the passage of our homestead law. If we look to the reason of the statute in question, we shall see that it has no application whatever to such a case as this. It is founded in the just principle, that a man owing debts, and having money or property with which to pay those debts, shall not put that money or property into a homestead, so as to place it beyond the reach of those to whom he owes such debts. Once in the asylum of a homestead, the law will protect that asylum against subsequent folly or misfortune; but it will not allow him to get there at the expense of his creditors. That is what the statute means, and that is all it means. It can have no application to a case where the homestead is carved out of a widow's dower, which, though not partitioned to her until after the creation of the debts, existed as an inchoate right, accompanied with possession and full beneficial enjoyment for nearly forty years before.

2. It is next said that the court erred in holding that Mrs. Dalby was the head of a family, and, as such, entitled to claim the separate tract of three and a half acres. It will be remembered that she claimed this tract, and it was set apart to her in lieu of exempt personalty, which she did not possess, by commissioners, under the provisions of sections 9 and 11 of chapter 55 of Wagner's Statutes. Rev. Stats., sects. 2343, 2346. It will be perceived that the phraseology of this statute is different from that of the homestead law. The latter (Rev. Stats., sect. 2689) reserves from execution "the homestead of every *housekeeper*, or head of family;"

whereas, this section of the statute relating to executions ( Rev. Stats., sect. 2343), reserves from execution certain property therein named, "when owned by the *head of a family.*" The question, then, is, whether a widow lady residing in her house with no other persons save her employees and servants, is to be deemed the head of a family within the meaning of this section. We are constrained to hold that she is not. The word "family," as now used, implies that the persons constituting the group which is so designated, are related to each other in some degree more or less direct, by blood or affinity. The relation is, obviously, a relation of *status*, and not merely a relation of *contract;* and it has, therefore, been held, that a man who has no other persons living with him than servants and employees, is not the head of a family within the meaning of the statutes creating homesteads and exemptions. *Cahoon* v. *McLendon*, 42 Ga. 406; *Garaty* v. *DuBose*, 5 S. C. 498. The case of a single woman, dwelling in such an establishment, must necessarily fall within the same principle. The decision of the supreme court in *Wade* v. *Jones* ( 20 Mo. 75), is not in conflict with this. It follows that the proceeding already described, by which this separate tract of three and a half acres owned by the defendant in fee was set apart to her in lieu of exempt personalty, was void, since she was not entitled to claim such exemption. Upon the evidence, the plaintiff was entitled to recover this tract.

3. The court, in accordance with the prayer of the defendant's petition, ordered the sheriff's deed, under which the plaintiff claims, to be delivered up, and cancelled. Whatever view we might have taken of the propriety of this ruling had we been able to sustain the defendant's right of exemption in all the land claimed, it follows, if we are right in the view that the plaintiff was entitled to recover under this deed the three and a half acre tract, that the ruling of the court ordering this deed to be cancelled was erroneous. The judgment of the circuit court is reversed and the cause remanded. All the judges concur.