Helmle v. Queenan.

## CHARLES A. HELMLE ET AL.

### v.

## MARY QUEENAN ET AL.

1. BANKS—LIABILITY FOR LOSSES.—A bank was incorporated by special act in 1867 to do general banking business; an amendment was passed in 1869 containing this provision as to stockholders' liability: "The stockholders of said corporation shall be responsible in their individual property in an amount equal to the amount of stock held by them respectively, to make good *all losses* to depositors and others, and no assignment of their stock shall release them from any such liabilities until after the fact of such assignment, etc., shall be published, etc." In 1877 the bank suspended payment. In 1879 it made a general assignment under the statute. A bill in equity was filed by certain depositors against the stockholders to charge them with amount due under the provision of the amendatory act above quoted. *Held,* that the decree of the court below charging the stockholders with the full amount due from the bank at the time of its suspension was erroneous. The court is of opinion that the liability is not primary.

2. JURISDICTION.—But whatever may be the above liability, primary, penal or otherwise, as complainants' rights are purely legal, arising upon a statute which does not designate the forum for their enforcement, the remedy is at law.

3. EQUITY JURISDICTION.—The right to sue at law does not necessarily exclude the jurisdiction of equity, provided there are proper grounds therefor. Where it was claimed that the jurisdiction of equity should be sustained in this case to avoid a multiplicity of suits; because the bill prays discovery, and the court acquiring jurisdiction for that purpose will retain it to grant relief; to secure a ratable distribution among creditors of equal equity, of a common but deficient fund. *Held,* that the first ground of jurisdiction

has respect to the case of the party complainant rather than of the defendant; that the discovery asked does not give the jurisdiction claimed; that the third ground can not be sustained as no deficiency is alleged and no ratable distribution asked, and the proof shows that there is more than enough to satisfy the just claims of all.

APPEAL from the Circuit Court of Sangamon county; the Hon. J. J. PHILLIPS, Judge, presiding. Opinion filed December 4, 1885.

Messrs. PALMERS, ROBINSON & SHUTT, Messrs. STUART, EDWARDS & BROWN, Mr. N. M. BROADWELL and Mr. J. A. CHESNUT, for appellants; that the alleged liability of the stockholders under the statute is penal, cited Diversey v. Smith, 103 Ill. 378.

As to jurisdiction: Mitford's Pleadings, 6 Am. Ed. 63; Hanchett v. Waterbury, Chicago Legal News, Aug. 15, 1885; Freydendall v. Baldwin, 103 Ill. 325.

Messrs. McCLERNAND & KEYES and Mr. L. F. HAMILTON, for appellees; that the right to sue at law does not necessarily exclude the jurisdiction of a court of equity, provided there are equitable grounds therefor, cited Eames v. Doris, 102 Ill. 350; 1 Story's Eq. Jurisprudence, § 71; Pool v. Docker, 92 Ill. 509; Bk. of Poughkeepsie v. Ibbotson, 24 Wend. 473; Van Hook v. Whitlock, 3 Paige, 409; Norris v. Johnson, 34 Md. 485; Perry v. Turner, 55 Mo. 418; Dozier v. Thornton, 19 Ga. 325.

The liability is primary and absolute: Coleman v. White, 14 Wis. 762; Corning v. McCullough, 1 Comst. 47; Harger v. McCullough, 2 Denio, 123; Paine v. Stewart, 33 Conn. 516; Young v. Rosenbaum, 39 Cal. 646; Culver v. Third Nat. Bk., 64 Ill. 528; Corwith v. Culver, 69 Ill. 502; Fuller v. Ledden, 87 Ill. 310.

PLEASANTS, J. The Springfield Savings Bank was incorporated by a special act of the legislature, approved February 28, 1867, with a capital of $100,000, in shares of $100 each, which was soon disposed of and its organization effected and

business commenced in the fall of the same year.  By the charter it was authorized to receive on deposit or in trust, such sum or sums of money as might from time to time be offered therefor by tradesmen, merchants, clerks, laborers, servants and others, to be repaid to such depositors when required, at such times, with such interest and under such regulations as the board of directors should from time to time prescribe; to buy and sell exchange, bank notes, bullion and stocks; and by an amendment passed March 11, 1869, to execute all such trusts, fiduciary or otherwise, as should be committed to it by any court, tribunal or other legally constituted authority of the State of Illinois or of the United States or elsewhere; which amendment further provides that "the stockholders of said corporation shall be responsible in their individual property in an amount equal to the amount of stock held by them respectively, to make good all losses to depositors and others, and no assignment of their stock shall release them from any such liabilities until after the fact of such assignment and the name of the person to whom made, and the amount of stock assigned shall have been advertised in some public newspaper published in the city of Springfield, in Sangamon county, for the period of three months."

The business of the bank was carried on with apparent success from the date of its organization until Dec. 17, 1877, a period of about ten years, when it suspended payment, closed its doors and never thereafter resumed operation.  For a time after such suspension its officers attempted to liquidate its affairs, and did in fact collect from its assets and pay to its creditors a considerable sum of money.  But on Ap'l 9, 1879, it made a general assignment to Virgil Hickox, under the statute.

On the 21st day of January, 1880, the complainants, Mary Queenan and Theodore Kerger, filed a bill herein for themselves, and all other creditors of the bank who should come in and contribute to the expenses of the suit, to charge appellants and others, defendants below, as stockholders, for the amounts due them respectively, from the bank, under the provision of the amendatory act above quoted.

It made the bank also a party defendant, and afterward, by amendment, the assignee; and alleged, in addition to the facts above stated, that said Mary deposited money in said bank, at different times, from about Aug. 5, 1872, to about May 1, 1875, and said Theodore, from about Sept. 25, 1875, to Aug. 24, 1877; that before and at the time of such deposits, the defendants owned the stock of said bank, but complainants did not know how many shares thereof were held by each, and that neither of the complainants had proved their claims or received any part thereof under said assignment. It prayed a discovery as to how much of said stock each of the defendants then held and when and how they acquired it; whether the same or any part of it had been assigned, and if so whether any notice thereof had been published, and when and for what time and in what newspaper; and that the sums due complainants should be ascertained by the court and the respective amounts of the stock held by each of the defendants, when each item of the indebtedness to the complainants respectively accrued be found, and the defendants (except the bank) required to pay them, and such other creditors as should come in and contribute to the expenses of the suit, the amounts to be found due them respectively from said corporation. The amount alleged to have been lost by the insolvency of the bank to complainant Queenan was $4,000, and to complainant Kerger, $1,000. A number of others claiming to be creditors of the bank by deposit intervened by petition, under an order of the court, and practically became parties complainant.

After demurrer to the bill for want of equity by divers of the defendants had been overruled, answers and replications thereto were filed and the cause referred to the master who reported the holders and transfers of the stock, the list of claimants and the amount of their claims, respectively, with interest from Dec. 17, 1877, the date of suspension, and other matters, including the following:

That after the assignment claims were proved in the county court to the amount of $84,916.22; that the assignee had paid thereon $61,194.04 and still had in his hands property of the insolvent estimated at $7,500, showing an excess of claims over

assets of $16,222.18, and had reported to the county court that the claims against said insolvent not proven before him amount to $9,793.94, which added to the $16,222.18 would make a total deficit of assets of $26,019.12.

The decree finds the whole amount due to complainants and the intervening petitioners by that found due to each to be $8,886.91; and after discharging some of the defendants, for various reasons set forth, finds those next hereinafter named to be liable therefor on the shares of the stock with which they were chargeable on Dec. 17, 1877, *pro rata* in the sums set opposite their names, and the number of such shares respectively as follows:

Charles A. Helmle, 50 shares, $355.37; Newton Bateman, 20 shares, $262.15; J. S. Bradford, 1 share, $13.11; T. S. Wood, 29 shares, $380.11; J. M. Palmer, 134 shares, $1,756.39; G. H. Souther, 29 shares, $793.34; A. Nolte, 20 shares, $262.15; R. P. Johnston, 5 shares, $65.54; T. Reisch, 20 shares, $262.15; R. S. Lord, 100 shares, $1,310.74; V. Hickox, 80 shares $1,048.59; T. J. Carter, 150 shares, $1,966.11; F. W. Tracy, 10 shares, $131.07; and directs that these sums be collected of said parties who are living by an order in chancery in the nature of an execution against them, collectively and severally, and of the estates of those deceased, in due course of administration.

Both complainants and defendants excepted to the decree and those of the defendants who perfected the appeal prayed by them have here assigned a large number of errors, the most of which, in the view we have taken, it will be unnecessary to notice; and only enough of the case presented in the large record is above stated to make that view clearly intelligible.

The theory of the decree is seen to be that the full amount of the valued claims existing against the Springfield Savings Bank and unpaid at the time of its suspension on December 17, 1877, are " losses," within the meaning of the amendment to its charter above quoted ; and that for these claims those who were stockholders of said bank, at the time they arose, respectively, or who, though they had ceased to be such by

reason of the assignment of their stock, had not advertised the fact of such assignment as prescribed by such amendment, were individually primarily responsible to the claimants respectively, to the extent of the amount of stock so held by them.

Appellants contend that the term "loss," as used in the amending act, signifies only the difference between the amount of the claim and what shall, or by reasonable diligence of the claimant might have been realized on account of it from the proper assets or resources of the bank.

This construction involves these consequences: that the liability of stockholders to depositors is not primary ; that the amount for which they may be liable at all, as such, can not be determined until the assets of the bank are exhausted; and that the burden will then rest upon the depositor to show that he has used due diligence to make his claim out of the assets, which is a question for a jury rather than for a chancellor; and if it be correct the decree in this case is wrong in principle and effect.

Upon the question thus made no clear precedent has been found. Indeed it is not found that the term " loss " or " losses " has ever been used in similar statutes of other States, or in more than one instance in Illinois ; and in that with a connection and reference which preclude this question. In the charter of the State Savings Institution granted February 21, 1861, among other provisions authorizing a general business, it was declared, "that each stockholder of the corporation hereby created shall, as to the trust funds and saving funds deposited therewith, be individually liable to the amount of his share or shares of the capital stock, for all losses or deficiencies that may occur while he was such stockholder," etc. Here the liability was absolute for all losses or deficiencies of a particular fund, and not for losses of depositors interested in it. Such loss or deficiency was also like the liability, absolute of itself. The fact of its occurrence without regard to the cause, manner or effect of it, or to the solvency or insolvency of the institution or to the loss or danger of loss to the depositor, made a complete case against the stockholder. Of course

Helmle v. Queenan.

if the institution made it good from its own proper resources, that discharged the liability for that loss or deficiency, but the parties interested in the fund were not bound to take any step to compel it so to do, in order to charge the stockholder. All that the statute required to fix his liability was a loss or deficiency of that fund. And there was a loss or deficiency, whenever the money on hand belonging to it was less than the amount deposited and remaining unpaid, of just that difference; which could be exactly ascertained at any time. That clearly is not this case nor similar to it, and we do not see that the opinion of the court in Eames v. Doris, 102 Ill. 350, touches the question here involved.

In the absence of express judicial construction resort must be had to the rules by which such construction is guided and determined. The first and most obvious, if not the most certain and helpful is, that words in a statute as in any other instrument, writing or speech, are to be understood according to their ordinary and usually accepted meaning unless some special reason appears to forbid it. Deere v. Chapman, 25 Ill. 610; Stuart v. Hamilton, 66 Id. 253 ; City of Beardstown v. City of Virginia, 76 Id. 34.

There is scarcely a word in more common use in business intercourse than the word "loss" or "losses" as applied to debt. Monied institutions, partnerships and individuals are constantly failing, suspending payment, closing their doors and not resuming. Yet we apprehend it is never understood from such failure and suspension alone, that just claims, unpaid at the time of suspension are "losses" to the creditor. It is very rarely that they turn out to be so in fact. Losses in such cases are distinguished from claims, in the common understanding, as only a percentage of the amount of those claims, and whenever the legislature here or elsewhere has undertaken to declare the individual liability of stockholders for the full amount of the liability of the corporation, it has used the terms "debt" or "indebtedness" and never the term "losses" unless it be so used in this instance. If the latter term is more restricted in its obvious and common meaning than the former the court should hold those seeking to enforce the provision

the more strictly to such sense, because the statute is in derogation of the common law.    Deere v. Chapman, *supra;* Bromley v. Goodwin, 95 Ill. 118.

It is said that insolvency and suspension of payment by a debtor of itself imports loss to the creditor.    If so, it imports what is not always true.    Payment in full is sometimes made even in such cases.    But it surely can not be said to import a total loss.    There are always some assets, and almost always some portion of the claim is realized.    If not, it is the fault of the creditor.    The most then it can be fairly said to import is a probable loss of some portion.    In this case the bill alleges assets and shows no reason why complainants might not have reached them in the hands of the corporation or of its assignee. It appears they were sufficient to pay a very considerable proportion of the claims.    The question then remained how much was the loss for which complainants were entitled to indemnity from the defendants and the burden was upon them to show it. If they were bound to show diligence or that it would have been unavailing, it is hardly an answer to say that since the assets of the bank have been or will be absorbed by the claims of other creditors, and defendants are liable only for what remains unsatisfied, the negligence of complainants could do them no injury.

The decree charging them with the full amount due from the bank at the time of its suspension can therefore be sustained only upon the ground assumed by complainants and held by the court, that as stockholders they were individually liable for these claims, primarily and absolutely.

We incline to the opinion that this holding was wrong. Appreciating the difficulty of formulating a rule by which to determine with certainty the character of their liability, and even of understanding some that have been proposed, we gather from the very interesting arguments of counsel and the cases cited that it is primary only when made to be for the debt simply as such.    It then arises upon the contract, which the statute at least impliedly authorizes the corporation to make for them and is coincident in time of inception and extent with that of the corporation.    No further fact is

required to be proved in order to establish it than would be required to establish that of the corporation, save only his relation to it as a stockholder. It may be limited to a particular class of indebtedness, as to that contracted before the capital is all paid in, or to trust deposits, and this may require additional proof as against the stockholder, but it relates only to the identity of the indebtedness as of the class intended, and not to the character of his liability. Being so identified the statute, to make him liable for it pecuniarily, must make him liable for it simply as a debt.

If it be for what may be less than the indebtedness against the corporation or because of some fact or condition besides such indebtedness (other than those above indicated) as that the debt was contracted by the corporation before it was authorized by law (Diversey v. Smith, 103 Ill. 378); or that it has disregarded some duty or prohibition imposed by statute (Gulliver v. Roelle, 100 Ill. 154; Weidenger v. Spruance, 101 Id. 285); or by the common law in force, or is upon some condition expressed or implied to be performed by the creditor or the like, it is not primary. In these cases it does not arise except *in posse* upon the contract made by the corporation. It may not be coincident as to the time of its inception or in its extent, with that of the corporation in any but those in which it would be clearly penal, as where the contract is made without authority or in violation of the statute. Diversey v. Smith, *supra*.

In this case, being declared to be for " losses", only which might be and in fact were less than the debts, which could not be ascertained until long after their creation, and which might involve a condition precedent to be performed by the creditor, such as the exercise of diligence to collect from assets of the corporation, we think it is not primary.

Whether it is penal seems more doubtful. A penal statute strictly is one that imposes a penalty for some violation of its own provisions. By the charter, as we have seen, the general business and object of this bank was declared to be among other things to receive money on deposit or in trust, from tradesmen and others " to be returned to such depositors when

required," etc., and it is suggested that this clause was inserted to enable the legislature to provide a penalty for its breach. But if this had been the purpose, it seems probable that the same legislature by the same act would have provided the penalty, yet the individual liability provision was not made until two years afterward. We rather think it was not intended by this clause to prescribe a duty but simply to describe the nature of the business authorized as that of a bank of deposit. Nor can it be assumed that the liability was imposed upon the ground of *laches* to be imputed to the bank for every loss to the depositor. We apprehend that the stockholders would have been none the less liable for a loss by reason of the inability of the bank to pay in consequence of destruction of its property by inevitable accident *vis major* or the act of God. They are to indemnify creditors against loss by failure of the bank, through whatever cause, without their fault.

But the clear ground on which we feel compelled to reverse this decree is that whatever may be the character of this liability, primary, penal or other—complainants' rights are purely legal, arising upon a statute which does not designate the forum for their enforcement and therefore the remedy is at law. Culver v. Third National Bank, 64 Ill. 528; Corwith v. Culver, 69 Id. 502; McCarthy v. Lavasche, 89 Id. 277; Wincek v. Turpin, 96 Id. 135.

It is true that the right to sue at law does not necessarily exclude the jurisdiction of equity provided there are proper grounds therefor. Eames v. Doris, 102 Ill. 350.

The case just cited in some of its features resembles this and is relied on by appellees. But there the jurisdiction was sustained upon the well recognized ground of securing a ratable distribution, among creditors of equal equity, of a common but deficient fund. The whole strength of that case lies in its point of difference from this; not in the fact that it was a common fund, and in other respects of like character with this, but in the single fact that it was deficient, inadequate to meet the claims against it in full, so that he who should obtain the first judgment at law might get more than his

equitable proportion, to the injury of the others. Here no deficiency is alleged, no ratable distribution is asked. The proof shows there is much more than enough to satisfy the just claims of all.

And this fact is an answer also to another suggestion, that by the proceeding in equity a multiplicity of suits will be avoided. That ground of the jurisdiction has respect to the case of the party complainant rather than of the defendant. It is that he can not fully obtain his rights by one suit at law but may by one in equity without wrong to his adversary; and does not authorize the consolidation of several and legal causes of action of different creditors against a common debtor. Such a proceeding might not avert or mitigate the evils of multiplicity to either party and might work great delay, embarrassment and injustice to the several complainants. No necessity is here perceived that either of them should bring more than one suit at law to obtain all his rights in the premises. But it is said the bill prays discovery, and that the court acquiring jurisdiction for that purpose will retain it to grant relief.

We do not regard the bill as one of this character. The relief asked is not of such a nature as a court of equity may properly grant in the ordinary exercise of its authority. It is simply to give judgment and execution for a legal debt, which is the more appropriate function of a court of law, besides that in this case the intervention of the jury may be necessary to ascertain the amount due. What is sought is matter of evidence merely proper as in aid of a suit at law, or of relief in equity if the party is on other grounds rightly in a court of equity, and such as is called for in almost every bill. But it is not such as requires to obtain it an appeal to the conscience of the defendant, based upon alleged misconduct in suppressing it, as we understand to be necessary in order to give jurisdiction for relief upon the ground of discovery merely. It is not alleged that the matter is exclusively within the knowledge of the defendants, and manifestly it is not so in fact. The officers of the bank, the assignee, the several stockholders,— some of them, in all probability, knew as to each besides him-

self, how many shares he held at any given time. Nor is it
charged that the books have been fraudulently withheld or
concealed or are inaccessible by legal means. Presumably
they are, and from the date of the assignment have been
under the control of the assignee. And as to the transfers
and notice thereof by publication in some Springfield news-
paper, without which they would have been unavailing as a de-
fense, clearly that is publicly known and easily provable with-
out aid from the defendants.

For these reasons, which appear to be fully approved by the
authorities, we are of opinion that the discovery here asked
did not give the jurisdiction claimed. 1 Story's Eq. Jur·
§§ 72–74 (Twelfth Edition). None other than these above
noticed are urged for it in the argument of counsel, and we
perceive none. The decree will therefore be reversed and
the cause remanded.