HENRY SPRING *et al.*

*v.*

THE COLLECTOR OF THE CITY OF OLNEY.

1. TAXATION *by municipal corporations.*  The act of April 15, 1873, authorizing incorporated cities to levy taxes annually, not exceeding three per cent, applies as well to cities incorporated under special charters as to those incorporated under the general act of 1872.

2.  The act of April 15, 1873, relating to taxation by cities, is not an act amendatory of the general act of 1872 for the incorporation of cities and villages, but is an independent act, applicable to all incorporated cities, whether under the general law or under special charters.

3.  The proviso to the fifth clause of the first section of the act of April 15, 1873, that "no tax shall be levied under this *section* unless two-thirds of all the aldermen elected shall vote in favor of the same," does not apply to the whole section, but only to the tax mentioned in such clause.

4. The power to levy taxes by a city "for general and contingent expenses, or any other expenses not herein otherwise provided for," is sufficiently broad to authorize the levy of a tax thereunder to pay ordinary debts.

5. STATUTE—*proviso, how construed.* A proviso in a statute is construed as affecting the paragraph to which it is annexed only, and not to the whole section or act, unless the collocation of the words shows a different intention.

6. INJUNCTION—*reasonableness of solicitor's fee on dissolution.* Where a temporary injunction is dissolved and the bill dismissed on motion, the case involving simply the construction of a statute, the allowance of $200 for solicitor's fees, in the assessment of damages, will be regarded as too large.

7. CHANCERY—*preserving evidence on assessment of damages on dissolving injunction.* If the evidence heard upon the assessment of damages, upon dissolution of an injunction, is not preserved in the record, the decree will be reversed. It is not sufficient for the decree to recite that evidence was heard, without showing what facts were proved.

APPEAL from the Circuit Court of Richland county; the Hon. JAMES C. ALLEN, Judge, presiding.

Messrs. CANBY & EKEY, for the appellants.

Messrs. WILSON & HUTCHINSON, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a bill for an injunction to restrain the collector of the city of Olney from collecting the municipal tax of one per cent levied and assessed against the complainants for the year 1874, on the ground that such levy is without authority of law.

The court below, on motion, dissolved the preliminary injunction which had been granted, and dismissed the bill, and assessed defendant's damages at $200, and complainants bring this appeal to reverse the decree.

The principal question presented is, whether the act of April 15, 1873, "in regard to the assessment of property, and the levy and collection of taxes by incorporated cities in this

State" (R. S. 1874, p. 254), is applicable to, and in force in, cities incorporated *by special acts* of the legislature.

The city of Olney was incorporated by special act in 1867, the act conferring upon the city council authority to levy a tax, for city purposes, not exceeding one-half of one per cent per annum. The city council levied a tax of one per cent, for municipal purposes, in the year 1874, and this is the tax sought to be enjoined. It is insisted that the limitation imposed, by the special charter of 1867, to a levy of only one-half of one per cent, must control, and that the levy of a tax of one per cent was in excess of the authority of the common council.

The act of April 15, 1873, is a general statute. It is by the first section enacted, "that, in all incorporated cities in this State, the city council may, by ordinance, annually levy and collect city taxes on real and personal property within the city, first, for," etc. (proceeding to enumerate seven specified purposes). The ninth section limits the levy for any one year to three per cent. This act draws no distinction between cities incorporated under a general law and those incorporated by a special act of the legislature; and contains no indication of any purpose to confine its operation to any particular class of cities, or reason for so confining it, or that it was framed with reference to any one class more than to another. The enactment is in respect to "*all* incorporated cities in this State," and we do not see why the language employed should not be allowed to have its plain and natural meaning, and be held to mean what it says, and to include all such cities, and not be restricted to a part only of them.

It is much dwelt upon by appellants' counsel, that, as the act of April 15, 1873, does not expressly repeal the provision of the charter of the city of Olney, which restricts the power to levy a tax to one-half of one per cent, the repeal thereof can only be by implication; that the law does not favor a repeal by implication, and that it is a principle that statutes of a general nature do not repeal, by implication, charters

and special acts passed for the benefit of particular municipalities, citing, in support thereof, Dillon on Mun. Corp., sec. 54, *State* v. *Stoll*, 17 Wall. 425, *The President and Trustees, etc.* v. *The County of La Salle*, 12 Ill. 339, and other like authorities; and reference is made to provisions in the special city charters of a large number of cities in the·State restricting the limit of taxation to one per cent and one-half of one per cent, and it is insisted that the legislature could not have intended, by the general statute of April 15, 1873, to repeal all these restrictive provisions in these numerous special charters, and enlarge their power to tax to three per cent, and that it is inadmissible to hold them to be repealed by implication.

The general principle, that the provisions of a special charter, or special authority derived from the legislature, are not affected by general legislation on the subject, applies, in this State, in respect to city charters, with a diminished force, since the adoption of the constitution of 1870. Art. 4, sec. 22, of that constitution, prohibits the General Assembly from incorporating cities, towns or villages, or changing or amending the charter of any town, city or village, except by a *general law.* Suppose, in the case of any one of the many cities referred to by counsel, where the limit of taxation is fixed by their special charters at one-half of one per cent, that this restricted power of taxing, which might have sufficed for the limited needs of the municipality in its beginning, had become inadequate for the enlarged necessities of its subsequent growth, and an increased power of taxation was required. The change in *its* charter for that purpose could only be made by a *general* law; so that the principle relied upon fails in its application here, in its full extent.

As the legislature, in 1872, passed a general law to provide for the incorporation of cities and villages, it is supposed by appellants' counsel that the act of April 15, 1873, must have been designed to supply defects in such general law passed in 1872, and to be amendatory thereof, and so

applies only to that class of cities that have become incorporated under the law of 1872.

But such supposition seems to be entirely gratuitous. The general law of 1872 appears to have contained ample provision for the levy and collection of taxes. The law of April 15, 1873, is, in form and terms, an independent act, and, as an amendment of the law of 1872, would not be in conformity with Art. 4, sec. 13, of the constitution regulating the mode of amending a law.

But if the statute of April 15, 1873, be held to repeal, by implication, so much of the charter of the city of Olney as restricts the power to levy taxes to one-half of one per cent, the point is then made, that no tax can be levied unless two-thirds of the aldermen shall vote in favor of the same, which was not the case here. As before remarked, the first section of the act provides that the city council may levy and collect taxes, following with an enumeration, in numerical order, under seven distinct heads, of seven distinct purposes or classes of objects, for which taxes may be levied and collected, one of which is as follows:

"*Fifth*—To provide for a sinking fund or funds, for the payment of the general or special indebtedness of the city," etc., ending with this proviso: "*Provided,* that no tax shall be levied under this section unless two-thirds of all the aldermen elected shall vote in favor of the same."

The point is raised upon the use of the word *section* in this proviso, it being contended that the construction must be according to the letter, that the qualification of the proviso extends to the whole section, to all of the seven subdivisions into which it is divided, and is not to be confined to the fifth one alone. We think otherwise; that the collocation of the proviso sufficiently denotes the meaning that it should qualify the taxing power only under the fifth subdivision of the section, which was, "to provide for a sinking fund or funds," etc. Provisos are construed as affecting the paragraph to which they are annexed, and we are of opinion the one in

question should be so construed here—to apply, not to the whole section, but only to the fifth paragraph to which it is annexed.

For the extraordinary purpose of raising money for a sinking fund, a two-thirds vote of all the aldermen elected might well be required for levying the tax, while for the levy of taxes for ordinary purposes, no good reason is perceived for requiring more than the usual majority vote. To apply the unusual requirement of a two-thirds vote of all the aldermen elected to the levying of ordinary taxes, the intention to do so should appear clear. Had the intention been that it should apply to the whole section, it is believed that intention would have been unmistakably expressed, and that the requirement in this proviso would have been placed in a different part of the section, so as to denote its application to the whole section, and that it would not have been placed where it is, so as to indicate it to be a qualification to the fifth subdivision only of the section.

The further point is made, that the ordinance for the tax in question levied sixty cents on the $100 to pay debts; that the only provision for levying a tax to ".pay debts" is in this fifth subdivision, and that, at least as respects this part of sixty cents on the $100 of the tax, there should have been a vote for it of two-thirds of all the aldermen elected.

But this fifth subdivision does not relate to levying taxes to pay debts, but only to provide for a sinking fund for the payment of the general or special indebtedness of the city. The general language of the first subdivision of the section, "for general and contingent expenses, or any other expenses not herein otherwise provided for," would cover the levy of the tax to pay debts.

The court below, upon the dissolution of the injunction, assessed and decreed against the complainants the sum of $200 damages for solicitor's fees, and this is assigned as error. This seems to us quite too large an allowance to be made here for the service of presenting to the court, on a motion

to dissolve the injunction, the simple question of the construction of this statute; besides, the evidence upon which the allowance was made was not preserved in the record, without which, as this court has frequently ruled, the decree can not be supported; and the recital here in the decree, that the finding of the court was on evidence heard, without showing what facts were proved, was insufficient in this respect, as held in *Albright* v. *Smith*, 68 Ill. 181. See *Goodwillie* v. *Millimann*, 56 id. 525; *Hamilton* v. *Stewart*, 59 id. 331.

The decree of the circuit court dissolving the injunction and dismissing the bill is affirmed, and that part of the decree assessing damages against the appellants is reversed, and the cause remanded.

*Decree modified.*