THE PEOPLE ex rel. Deneen, State's Attorney,

v.

THE TOWN OF THORNTON.

*Opinion filed June 21, 1900.*

1. QUO WARRANTO—*practice upon application to file information in nature of quo warranto.* Upon application for leave to file an information in the nature of a *quo warranto* the court may either enter a rule *nisi* upon the respondent to show cause why the information should not be filed, or may act upon the application without entering such rule, as, in its opinion, the exigencies of the case demand.

2. SAME—*court's discretion in acting on application to file quo warranto is not arbitrary.* The granting of leave to file an information in the nature of *quo warranto* rests in the sound discretion of the court hearing the application, but such discretion must be exercised according to the principles of law.

3. STATUTES—*when former statute will be deemed repealed.* A statute which revises the whole subject of a former one and is intended as a substitute for it operates as a repeal of the former, although it contains no express words to that effect and although the former act is special.

4. SAME—*effect of introducing exception as to operation of statute.* The introduction of an exception as to the operation of a general statute necessarily excludes all other independent extrinsic cases.

5. SAME—*effect, upon construction, of constitutional prohibition of special legislation.* Since the constitution of 1870 forbids the passage of local or special laws regulating township affairs, it is the duty of the courts to favor a construction which will make general laws apply to matters covered by previous special legislation.

6. SAME—*when rule that special legislative authority is not affected by general law does not apply.* The principle that a special authority derived from the legislature is not affected by general legislation on the subject has no application where the general act shows that it was the intention to repeal or modify the special act.

7. MUNICIPAL CORPORATIONS—*town organized under the township organization law is not an "incorporated town."* A town organized under the township organization law is but a *quasi* corporation and not an incorporated town, and hence is not within the meaning of the word "town," as used in the act of 1883, (Laws of 1883, p. 92,) concerning the licensing of dram-shops in counties, cities, towns and villages.

8. SAME—*act of 1869 did not make town of Thornton an incorporated town.* The special act of 1869, conferring additional powers upon the town of Thornton, in Cook county, did not change its character

from a town existing under the township organization law into an incorporated town.

9. SAME—*town of Thornton cannot license dram-shops.* The acts of 1883 and 1887, (Laws of 1883, p. 92; Laws of 1887, p. 194;) concerning dram-shops, were intended by the legislature to establish a uniform license system, which is inconsistent with the special act of 1869, conferring power upon the town of Thornton to license dram-shops, and hence such special act must be regarded as repealed by such acts of 1883 and 1887, which leave the county, and not the town, the proper authority to license dram-shops outside the corporate limits of municipalities having power over the subject.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. JONAS HUTCHINSON, Judge, presiding.

In this case the State's attorney for the county of Cook filed in the superior court of Cook county a petition for leave to file an information in the nature of *quo warranto* upon the relation of Clarence E. Mooar against the town of Thornton in Cook county, alleging that the said town is a public corporation, existing under the laws of Illinois, and had been for more than two years last past exercising powers not conferred by law in the matter of licensing the sale of intoxicating liquors, and that said State's attorney had reason to believe that such allegations could be established by proof. The petition is dated February 13, 1899, and verified by the affidavit of said Mooar, sworn to on February 14, 1899. On February 18, 1899, the superior court entered an order requiring the respondent, the town of Thornton, to show cause, within ten days, why said information should not be filed. On March 4, 1899, the respondent answered the rule by filing an answer, verified by the affidavits of the supervisor of the town and of the town clerk. On July 13, 1899, the court entered an order, wherein, after reciting that the cause came on to be heard on the petition or motion of the State's attorney for leave to file the information and the answer thereto, and after further reciting that the court had read the information and listened to arguments of counsel, it was ordered that the motion or leave to file the information be denied. In other words, the court

entered an order, refusing to allow the information to be filed, and entered judgment in favor of the respondent, the town of Thornton, against the petitioner for costs. To this ruling the relator excepted. The present appeal is prosecuted from the order of. the court denying the motion or petition of plaintiff in error for leave to file the information in the nature of a *quo warranto.*

The information, which the State's attorney asked leave of the court to file on the relation of said Clarence E. Mooar, alleges that the town of Thornton is a public corporation in Cook county, organized under the act of the General Assembly of Illinois, entitled: "An act to revise the law in relation to township organization" approved and in force March 4, 1874; that said town, by its officers, has, for three years last past and more, been exercising without any legal authority the power of licensing the sale of intoxicating liquors within its corporate limits; that on July 1, 1898, it issued to George S. Freeman and to William McClatchey respectively a license to keep a dram-shop within the limits of said corporation; and that said persons since then have been selling and still do sell intoxicating liquors under said licenses. The information further alleges, in addition to the allegations above set forth, that the said town exercises without legal authority the power of licensing the sale of intoxicating liquors within two miles of the corporate limits of the city of Harvey, which city is incorporated under the laws of the State and has authority to license, regulate, restrain or prohibit the sale of intoxicating liquors within its corporate limits, and is located within the corporate limits of said town of Thornton; and that said town, by its officers, issued to the persons above named, on July 1, 1898, a license to sell intoxicating liquors within the corporate limits of said town of Thornton and within two miles of the corporate limits of said city of Harvey.

The answer to the rule to show cause sets forth various alleged reasons why the information should not be

filed.    Among these are that the allegations of the petition for leave do not establish probable grounds for the proceeding; that the town of Thornton is not a corporation against which such an information will lie; that the power of licensing is exercised by the board of auditors of the town, and has been so exercised without question and by universal acquiescence for more than twenty-seven years last past; and that the proceeding is one for private relief.   The answer then relies upon the Statute of Limitations, and charges that the proceeding is barred by the lapse of time.   The answer further alleges that the proceeding should be brought against the persons exercising privileges under such licenses, and not against the town; that relator, Mooar, is a mere interfering volunteer; that, if any relief is proper, it can be obtained in a proceeding at law.   The answer further asserts that the court should, in the exercise of a sound discretion, discharge the rule upon the alleged ground that the relief sought is not necessary, and is contrary to public policy; that the relator, Mooar, has no legal interest in the subject, and his motives are not proper; that the proceeding will be a public inconvenience and result in no practical benefit.

After alleging the reasons above set forth, the answer to the rule then proceeds to state that the town of Thornton was organized under the general township organization laws of the State before the year 1869; that, on March 26, 1869, an act was passed and went into effect, entitled, "An act to confer additional powers on the board of auditors of town accounts, and the commissioners of highways of the town of Thornton in the county of Cook," which act was therein declared to be a "public act," and has ever since been and still is in full force; that said act, among other things, provided that "the board of auditors of town accounts of the town of Thornton in the county of Cook, in addition to the powers now conferred by law, shall have power, and it is hereby made their

duty, at any regular or special meeting, to make, ordain
and establish such ordinances, rules and regulations, and
to fix and determine such fines, penalties and forfeitures,
and grant license, in and concerning:  *  *  *  The regu-
lating and licensing of all places kept for the purpose of
retailing, selling or giving away any rum, gin, brandy,
whisky, bitters, ale, lager beer, or any other fermented,
spirituous, mixed or intoxicating liquors, in less quantity
than one quart;" that, from the year 1869, licenses have
been issued each year by said board to run saloons, but
always within said town and without the corporate lim-
its of any incorporated city or village therein; that said
town has within its limits forty-eight sections, about six-
teen of which are included within the limits of the city of
Harvey, and seven incorporated villages, in none of which
has said board ever issued a license to maintain a saloon;
that all the land in the town not within the limits of the
said city and villages, called outside territory, contains
widely separated settlements with intervening farm lands
traversed by many highways, which have been kept in
repair and maintained largely by the funds received from
said licenses; that no part of the lands within the town
outside of said city and villages is more than two miles
from the limits of the city or some one of said villages;
that the city and villages have no power to license be-
yond their respective boundaries, and the county board
cannot license saloons within two miles of any city or
village; that the road and bridge tax of said town is in-
adequate to maintain the roads in said outside territory
and is now aided by the licensed revenue; that all the
saloons so licensed are under adequate police supervi-
sion, and are the only places accessible to farmers trav-
eling to town to market their produce; that, since 1869,
the board of auditors of said town and the county board
of Cook county have construed the law as permitting
saloons to be licensed in said town by said board of aud-
itors, and not otherwise; but since 1869, no licenses have

been issued for saloons in said town by the county board or any other body or person, except said board of auditors and, in said city or villages, their respective authorities; that such has been the universal construction of the law of this State, after as well as before the dram-shop acts of 1874 and 1883, by the officers charged with the execution of the laws relating to saloons or dram-shops; and that the relator, Mooar, is not injured in person or property or otherwise by the licensing of saloons in said town.

E. C. AKIN, Attorney General, CHARLES S. DENEEN, State's Attorney, GEORGE McA. MILLER, and SAMUEL W. PACKARD, for plaintiff in error.

ISAIAH T. GREENACRE, and FREDERIC R. DEYOUNG, for defendant in error.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

*First*—The court below refused to allow the information in the nature of *quo warranto* to be filed upon the motion or petition of the State's attorney. Under the practice in this State in relation to *quo warranto*, two courses may be pursued by the court to which application is made for leave to file the information. One course is the submission of a motion or petition, based on affidavit, for leave to file an information in the nature of a *quo warranto*, and the entry by the court of a rule *nisi* upon the respondent to show cause why the information should not be filed; in response to which rule, the respondent answers by counter-affidavits. (*People* v. *Waite*, 70 Ill. 25; *People* v. *Moore*, 73 id. 132; *People* v. *North Chicago Railway Co.* 88 id. 537). The other course of proceeding is to act upon the petition of the relator without first laying a rule upon the respondent to show cause. In the latter case, if the court or judge is satisfied that there are probable grounds for the filing of an information, such court or judge may allow it to be filed. In other words, the court

may or may not dispense with the rule *nisi* as in its opinion the exigencies of the case demand. (*People* v. *Moore, supra; People* v. *Golden Rule,* 114 Ill. 34; *People* v. *McFall,* 124 id. 642).

The court must be satisfied that there is probable cause for allowing the information to be filed and the summons to issue. The granting of leave to file informations in the nature of *quo warranto* is a matter, which rests in the sound discretion of the court, acting upon the application therefor. But while it is true, that the court has the discretion to grant or refuse the leave asked according to the circumstances, yet such leave ought not to be arbitrarily refused. The discretion to be exercised is a sound discretion according to law. (*People* v. *Waite, supra; People* v. *Callaghan,* 83 Ill. 128; *People* v. *North Chicago Railway Co. supra; People* v. *Golden Rule, supra;* 17 Ency. of Pl. & Pr. p. 445). In *People* v. *North Chicago Railway Co. supra,* we said: "Leave, on the one hand, is not granted as a matter of right upon the part of the relator; and, on the other hand, a court is not at liberty to arbitrarily refuse, but must exercise a sound discretion in accordance with principles of law."

In the case at bar, the court below did not act upon the motion or petition for leave without entering a rule *nisi.* On the contrary, the rule to show cause was entered, and an answer, accompanied by affidavits, was filed in response to the rule. The court refused to allow the information to be filed upon a consideration of the allegations of the information upon its face and of the matters set up in the answer to the rule. It appears that the material facts in the case are not disputed. It is not denied by the respondent in its answer, that the town of Thornton has been issuing, and still continues to issue, licenses for the keeping of saloons. The question, presented upon the face of the proceedings and argued on both sides, is whether the town of Thornton had the statutory right to issue such licenses; and this question

is to be determined by the solution of the further question whether the act of the legislature, under which the town of Thornton claims to issue licenses, is a valid enactment, or whether, if it is a valid enactment, it has been repealed by subsequent legislation. It is thus apparent that the issue presented is purely one of law. It is furthermore manifest, that the issue of law thus presented can receive as full and careful consideration on this application, as could be given to it in case leave to file the information had been granted. In this condition of things, it may be assumed that the decision of the questions of law involved upon the same undisputed facts would be the same on the final hearing of the *quo warranto*, as upon the motion or petition for leave to file the information. Such was the view taken by this court in the case of *Attorney General* v. *Chicago and Evanston Railroad Co.* 112 Ill. 520. Following the course pursued in the latter case, we proceed to determine whether, under the law and the circumstances of the case, the court below decided correctly in refusing leave to file the information.

*Second*—The defendant in error, the town of Thornton, bases its right to issue licenses to sell intoxicating liquors upon the act of March 26, 1869, referred to in its answer to show cause, and set out in the statement preceding this opinion. The first position taken by the plaintiff in error is, that this act of March 26, 1869, is void as being repugnant to the constitution of 1848, which was in force when the act was passed. Section 6 of article 7 of the constitution of 1848 provides that "the General Assembly shall provide, by a general law, for a township organization," etc. On February 12, 1849, and again in 1851 and in 1861, the legislature passed general laws, providing for county and township organization in pursuance of the provision of the constitution of 1848 above referred to. Plaintiff in error claims that the act of March 26, 1869, is a special act, conferring the special power of granting licenses to sell liquor upon the town of Thorn-

ton and upon no other town, and that it is, therefore, in derogation of the constitutional requirement that the township organization shall be provided for by a general law. The discussion of this constitutional question is interesting, and the arguments upon both sides in relation to it are able and ingenious, but we do not deem it necessary to the decision of this case to pass any opinion upon the constitutionality of the act of 1869, and hence forbear to do so.

It is further contended by the plaintiff in error, that, even if the act of March 26, 1869, is not unconstitutional, it has been repealed by one or the other of the following acts passed since the adoption of the constitution of 1870, to-wit: "An act to revise the law in relation to township organization," approved and in force March 4, 1874, being chapter 139 of the Revised Statutes of 1874; "An act to restrict the powers of counties, cities, towns and villages in licensing dram-shops, to provide for granting a license to retail malt liquors separately, and for punishing persons holding such separate license for unlawful sale and gifts," approved June 15, 1883, in force July 1, 1883; (2 Starr & Curt. Ann. Stat.—2d ed.—pp. 1601, 1602); "An act to regulate the sale of intoxicating liquors outside the incorporated limits of cities, towns and villages," approved May 4, 1887, in force July 1, 1887. (2 Starr & Curt. Ann. Stat.—2d ed.—1603, 1604).

We do not deem it necessary to take up any time in the discussion of the act of March 4, 1874. It will be sufficient to consider the effect upon the act of March 26, 1869, of the acts of June 15, 1883, and May 4, 1887.

Section 5 of article 10 of the constitution of 1870 provides that "the General Assembly shall provide, by general law, for township organization, under which any county may organize," etc. This provision of the constitution of 1870 is substantially the same as section 6 of article 7 of the constitution of 1848. (*People* v. *Knopf*, 171 Ill. 191). But the constitution of 1870 contains another

provision, which was not embodied in the constitution of
1848, and that provision is the one which prohibits spe-
cial legislation.    Section 22, of article 4 of the constitu-
tion of 1870, provides that "the General Assembly shall
not pass local or special laws in any of the following
enumerated cases, that is to say: For— * * * regu-
lating county and township affairs;  * * * incorpo-
rating cities, towns or villages, or changing or amending
the charter of any town, city or village;  * * * in all
other cases where a general law can be made applicable,
no special law shall be enacted."   In pursuance of sec-
tion 5 of article 10 of the constitution of 1870, the legis-
lature passed a general law for township organization
applicable to all counties in the State, which had or
might adopt that system, repealing all conflicting laws
on the same subject.    This general law was revised in
1874, and is now chapter 139 of the Revised Statutes of
1874.    (*Kelly* v. *Gahn*, 112 Ill. 23).    Cook county adopted
township organization prior to 1867, and is still under
that system.  (*Kelly* v. *Gahn, supra; People* v. *Knopf, supra*).
Section 1 of the act of June 15, 1883, provides "that here-
after it shall not be lawful for the corporate authorities
of any city, town or village in this State, to grant a
license for the keeping of a dram-shop, except upon the
payment, in advance, into the treasury of the city, town
or village granting the license, such sum as may be de-
termined by the respective authorities of such city, town
or village, not less than at the rate of five hundred
($500.00) dollars per annum:   *Provided*, that in all cases
when a license for the sale of malt liquors only is granted,
the city, town or village granting such license, may grant
the same on the payment, in advance, of the sum of not
less than at the rate of one hundred and fifty ($150.00)
dollars per annum," etc.   Section 2 of the act of 1883 pro-
vides that "the county boards of each county may grant
licenses to keep so many dram-shops in their county as
they may think the public good requires, upon the appli-

cation, by petition, of a majority of the legal voters of the town, if the county is under township organization, * * * and upon the payment into the county treasury of such sum as the board may require, not less than five hundred ($500.00) dollars per annum for each license: * * * *Provided,* that in all cases where a license is granted for the sale of malt liquors only, such board may grant the same, upon payment into the county treasury, of a sum not less than one hundred and fifty ($150.00) dollars per annum for each license: *Provided, further,* such board shall not have power to issue any license to keep a dram-shop in any incorporated city, town or village, or within two miles of the same, in which the corporate authorities have authority to license, regulate, restrain, or prohibit the sale of liquors, or in any place where the sale of liquors is prohibited by law."

Section 1 of the act of May 4, 1887, provides "that whoever shall, outside of the incorporated limits of any city, town or village, by himself or another, either as principal, clerk or servant, directly or indirectly, sell, barter or exchange, or in any manner dispose of, for money or anything of value, any intoxicating liquors of any kind in any less quantity than five gallons, and in the original package as put up by the manufacturer, shall, for each offense, be fined not less than $50.00 nor more than $100.00, or imprisoned in the county jail not less than thirty nor more than ninety days, or both, in the discretion of the court." Section 5 of the act of 1887 provides as follows: "Nothing contained herein shall be construed so as to prevent county boards from granting license to deep dram-shops as is now provided by law, and all persons keeping dram-shops so licensed shall be exempt from the provisions of this act."

It is a well settled principle of statutory construction, that a subsequent statute which revises the whole subject of a former one, and is intended as a substitute for it, operates as a repeal of the former, although it contains

no express words to that effect. (*Culver* v. *Third Nat. Bank of Chicago*, 64 Ill. 528; *Andrews* v. *People*, 75 id. 605; *Devine* v. *Comrs. of Cook County*, 84 id. 590; *People* v. *Board of Education*, 166 id. 388). The rule, thus announced, is applicable even when the provisions of a prior law are contained in a special act. (*Andrews* v. *People, supra; People* v. *Board of Education, supra*). Where the legislature frames a new statute upon a certain subject matter, and the legislative intention appears from the latter statute to be to frame a new scheme in relation to such subject matter and make a revision of the whole subject, there is in effect a legislative declaration, that whatever is embraced in the new statute shall prevail, and that whatever is excluded is discarded. The revision of the whole subject matter by the new statute evinces an intention to substitute the provisions of the new law for the old law upon the subject. (Black on Interpretation of Laws, p. 116; *Murdock* v. *Mayor of Memphis*, 20 Wall. 590).

Under the act of 1883 the only authorities, which are authorized to issue licenses for the sale of liquor, are the corporate authorities of cities, towns and villages, and the county boards of the respective counties. The word, "town," as used in sections 1 and 2 of the act of 1883, refers to incorporated towns, and not to such a town as the town of Thornton. It has been expressly held by this court, that a town, created under a township organization, is not an incorporated town in the proper sense, and that this very town of Thornton, like other towns in counties which have adopted township organization, is "a local subdivision of the State, created by the sovereign will, without the particular solicitation or consent or concurrent action of the people who inhabited it." It is what the law terms a *quasi* corporation only, being an involuntary organization for the purposes of government. The additional powers, conferred upon the town by the act of 1869, do not change the character of the corporation from such a town, as existed under township

organization, into an incorporated town so-called.  In other words, the town of Thornton was not changed by the act of 1869 from a township into an incorporated town.  (*People* v. *Village of Harvey,* 142 Ill. 573).

The act of 1883 makes no provision for the issuance of licenses by towns under township organization.  On the contrary, it confers the power to issue licenses in territory outside of incorporated towns, cities and villages upon the county board of each county.  The county board is, by the act, given the power to "grant licenses to keep so many dram-shops in their county as they may think the public good requires;" and not only so, but they are to grant such licenses "upon the application by petition of a majority of the legal voters of the town." The legal voters of the town are, by the provisions of the act, the persons upon whose application the county board is to grant the license.  It surely cannot have been the intention of the legislature, that the town should grant licenses to sell liquor, when the power to issue such licenses is given to the county board upon the application of the legal voters of the town.  It is clear, that the power to issue licenses in towns is given to the county board, and, upon the plainest principles of construction, this excludes the right of towns themselves to issue such licenses.  It is also a well settled principle, that, where two statutes are clearly repugnant to each other, the one last enacted operates as a repeal of the former; and this principle is applicable even though the prior statute is a local or special act which is repugnant to a subsequent general act.  (*Illinois and Michigan Canal* v. *City of Chicago,* 14 Ill. 334; *Dingman* v. *People,* 51 id. 277; *Water Comrs.* v. *Conkling,* 113 id. 340; *McCormick* v. *People,* 139 id. 499; Sedgwick on Stat. Const. p. 124).  Black, in his work on Interpretation of Laws says (p. 118): "A general statute will repeal prior special or local acts, without expressly naming them, where they are inconsistent with it, and where it can be seen from the whole en-

actment that it was the intention of the legislature to sweep away all local peculiarities, though sanctioned by special acts, and to establish one uniform system." The special act of March 26, 1869, conferring upon the town of Thornton the power to grant licenses to sell liquor, placed no limit upon the license fee which the town might exact, whereas the act of 1883 requires a license fee of $500.00 in certain cases and of $150.00 in other cases. The special act of 1869 does not require a license fee to be paid in advance, while the act of 1883 does make such requirement. Again, section 2 of the act of 1883, as has already been stated, requires a petition to be signed by the majority of the legal voters of the town before the county board can grant a license, but the special act of 1869 requires no petition of any kind. Surely, it could not have been intended by the legislature that the township authorities should issue a license under the act of 1869 in the face of a petition signed by a majority of the legal voters of the town, requesting the county board to grant such license. It could not have been intended, that the authorities of the two bodies, to-wit: the town and the county, should both issue licenses in the town. The county boards are prohibited by the act of 1883 from issuing licenses within two miles of any incorporated town, city or village where the corporate authorities may license, but, under the special act of 1869, the town of Thornton could issue a license anywhere in the township; so that, if the special act of 1869 is still in force, the provision in regard to the limit of two miles would be meaningless, so far as the town of Thornton is concerned. The inconsistencies between the two acts are so manifest, that the two cannot stand together, and, therefore, the special act of 1869, being the earlier, can not be enforced.

But the repugnancies between the act of May 4, 1887, and the act of 1869 are more glaring than those which exist between the latter act and the act of 1883. The act

of May 4, 1887, is entitled, "An act to regulate the sale of intoxicating liquors outside the incorporated limits of cities, towns and villages." Being a general act, it, therefore, necessarily applies to so much of the township of Thornton, as is outside of the corporate limits of the city, towns and villages in that town. The act of 1887 prohibits the sale of liquors outside of the limits of any town, city or village in quantities less than five gallons and in the original packages as put up by the manufacturers; and its violation is punishable by fine or imprisonment. It thus makes all sales, except in the quantity and package as above stated, illegal and punishable. It makes no exception of any sale. It necessarily follows, that all the territory situated in the town of Thornton, outside of the incorporated limits of towns, cities and villages therein, is under the operation of the act of 1887. The words, "whoever shall," seem to have been chosen for the express purpose of making the act of 1887 general in its operation. In the face of the provisions of the act of 1887, the sale of liquors in small quantities cannot be carried on legally in that portion of the town of Thornton, which lies outside of the incorporated villages and the city in said township, unless the county board exercises its discretion to license the traffic.

Section 5 of the act of 1887 expressly excepts from its operation the county board of each county. But for the exception contained in section 5, all the licensing power would have been taken away from the county boards. But that section provides, that nothing contained in the act "shall be construed so as to prevent county boards from granting license to keep dram-shops as is now allowed by law." The town of Thornton is not included in this exception, and, as the act of 1887 prohibits all sales outside of the incorporated limits of cities and villages, the power to license, which the town of Thornton had under the act of 1869, was necessarily taken away by the act of 1887. It is a well settled principle, that

such an express exception, as is made by the legislature in section 5, excludes all others. "An express exception, exemption or saving excludes others. When a general rule has been established by statute, with exceptions, the court will not curtail the former nor add to the latter by implication. Exceptions strengthen the force of a general law, and enumeration weakens it as to things not expressed." (Sutherland on Stat. Const. sec. 328, p. 414). The introduction of an exception as to the operation of a general statute is necessarily exclusive of all other independent extrinsic exceptions. (*Dutton* v. *City of Aurora,* 114 Ill. 138; Black on Interpretation of Laws, p. 275).

The constitution of 1870 not only requires, that township organization shall be provided for by general law, but also forbids the passage of any local or special law regulating township affairs. In view of this fact, it is the duty of courts in this State to favor a construction, which will make general laws apply to matters covered by prior special legislation. Such a construction will be more readily favored than would be the case, if the legislature still retained the power to enact special laws applicable to the same subject. (*McCormick* v. *People, supra*).

It is, however, claimed on the part of the defendant in error, that the provisions of a special charter or special authority, derived from the legislature, are not affected by general legislation on the subject. It has been held, however, that this general principle applies in this State in respect to municipal charters with a diminishing force since the adoption of article 4 of section 22 of the constitution of 1870. (*Spring* v. *City of Olney,* 78 Ill. 101). The maxim—*generalia specialibus non derogant*—imposes a well recognized rule in the interpretation of statutes. It has its basis in the presumption "that the legislature, in passing a general law, has only general cases in view, and not particular cases which have already been provided for by special act." (*McCormick* v. *People, supra*). It is sought to apply this maxim to the present case by

contending, that the general acts of 1883 and 1887 cannot repeal the special act of 1869, granting a special power to the town of Thornton. But the rule, expressed by the foregoing maxim, has no application where the language of the general act shows, that it was the intention of the legislature to repeal or modify the provisions of the special act. (*McCormick* v. *People, supra*). There is no rule, which prohibits the repeal of a special act by a general one, and the question is always one of intention. (*McCormick* v. *People, supra*). The intention to abrogate the provisions of a special act by a general one, which is later in date, is manifested by the fact that the provisions of both cannot stand together. (Black on Interpretation of Laws, p. 118).

In *Spring* v. *City of Olney*, 78 Ill. 101, it appeared that the city of Olney was incorporated by a special act in 1867, conferring upon the city council authority to levy a tax for city purposes, not exceeding one-half of one per cent per annum, but, by a subsequent act passed on April 15, 1873, incorporated cities were authorized to levy taxes annually, not exceeding three per cent; and the city council, having levied a tax of one per cent, it was insisted that the limitation imposed by the special charter of 1867 to a levy of only one-half of one per cent must control; it was, however, there held that the act of April 15, 1873, applied, as well to cities incorporated under special charters, as to those incorporated under the general act of 1872. In that case, the principle was insisted upon, that statutes of a general nature do not repeal, by implication, charters and special acts, passed for the benefit of particular municipalities; but the principle was held to be inapplicable in that case, upon the ground that the act of 1873 drew no distinction between cities, chartered by a general law, and those, incorporated by a special act of the legislature.

Again, in *McCormick* v. *People, supra*, the special charter of an incorporated town passed in 1867 provided for

the election of the president of a board of trustees by the board itself, but, in 1887, a general law was passed providing for the election of the president of the board by the voters of the town; and it was held, that the provisions of the general law were so far in conflict with those of the special charter, as to work a repeal of the latter by implication; and it was also there held, that the question, whether the general law operated to repeal the special act, was a question entirely of intention.

Applying these principles to the case in hand, we are of the opinion that the intention of the legislature was to establish, by the acts of 1883 and 1887, a uniform system in regard to the issuance of licenses to sell liquor, which is inconsistent with the special power conferred upon the town of Thornton by the act of 1869, and that, therefore, the latter act is not now in force, being repealed by the subsequent legislation of 1883 and 1887.

For the reasons above stated, the order of the superior court of Cook county in refusing leave to file the information, as requested by the district attorney, is reversed, and the cause is remanded to that court for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*