Chickasha Nat. Bank v. Cloud, County Treasurer, et al.

that said case No. 1398 has abated, and the plaintiffs have filed two separate and distinct petitions, same being docketed as case No. 1433 and case No. 1443, involving the same causes of action as set forth in case No. 1398.

The judgment on the demurrer being in favor of the defendant and final, the attachment is thereby discharged. See section 4855, Rev. Laws 1910. This court will not decide abstract or hypothetical cases, disconnected from the granting of actual relief or from the final determination of which no practical relief can follow. See *Ham v. McNeil,* 27 Okla. 773, 117 Pac. 207, and other Oklahoma cases therein cited.

The case is dismissed.

All the Justices concur.

---

CHICKASHA NAT. BANK v. CLOUD, *County Treasurer, et al.*

No. 5545.   Opinion Filed April 7, 1914.

(139 Pac. 1134.)

TAXATION—Valuation—Correction—Equitable Relief. Section 273, Williams' Ann. Const. Okla., provides: ''All property * * * shall be assessed for taxation at its fair cash value, * * *'' etc. Where a bank intentionally returns a valuation of its property at 75 per cent. of its true value for purposes of taxation, and with the connivance and concurrence of the board of county commissioners, as a county board of equalization, seeks to have its property, together with all other property in that county, valued at 75 per cent. of its true value for purposes of state, county, and municipal taxation, and the State Board of Equalization raises such valuation on the bank's property to the true value thereof, **held,** a court of equity will not relieve such ·bank from its predicament, although some other taxpayers in the county may have profited, and the bank failed to profit by such transaction.

(Syllabus by the Court.)

*Error from District Court, Grady County;*
*Frank M. Bailey, Judge.*

Action by the Chickasha National Bank against W. T. Cloud, County Treasurer, and others, to enjoin collection of taxes. Judgment for defendants, and plaintiff brings error. Affirmed.

*F. E. Riddle,* for plaintiff in error.

*Oscar Simpson,* Co. Atty., and *Bond & Melton,* for defendants in error.

LOOFBOURROW, J.   In this action the plaintiff in error seeks to enjoin the collection of certain taxes levied for the fiscal year of 1912.   The record in this case shows that it has been the custom of Grady county, Okla., since statehood, for the taxing officers to cause the taxable property of that county each year to be valued at about 75 per cent of its fair cash value, as a basis upon which levies are made for the purpose of raising revenues for state, county, and municipal purposes.   In the year 1912 it is shown that yearling steers were assessed at an average of $15 a head, two year olds, $19, three year olds, $32, mules $87, stocks of merchandise, 66 2-3 per cent of the invoice price; that property in the city of Chickasha was rated at a greater percentage of its real value than other property in Grady county, for the purpose of obtaining sufficient valuation for the maintenance of their schools; that the banks in Grady county, in preparing their assessment list, added their capital stock, undivided profits, and surplus, and deducted 25 per cent. therefrom, and returned to the assessor 75 per cent of the cash value as a basis upon which to levy taxes; that the county assessor increased the same to 100 per cent of the actual cash value of said banks and the board of county commissioners, when in session as a county board of equalization that year, reduced the same 25 per cent, as shown by the testimony of all the members of the board of county commissioners, one being a stockholder in a national bank at Chickasha, who testified:

"We tried to equalize it to our best judgment.   We figured the property was rendered about 75 per cent of the value, and, while we had the power to have raised all the property to 100 cents on the dollar, we lowered the banks to 75 per cent.   We figured the property generally was assessed in the county about 75 cents on the dollar:"

Thereafter the State Board of Equalization made certain changes in the valuation of the property in that county and directed that the valuation of the banks be raised to its actual cash value, and caused the following letter to be sent to the county assessors in every county in the state:

"State of Oklahoma, Office of State Auditor. Oklahoma City, August 12, 1912. To all County Assessors—Gentlemen: At a meeting of the State Board of Equalization August 9, 1912, the following resolution was offered and adopted, and I would thank you, after complying with the same, to notify this office of the change in the valuation of your personal property, if any; the resolution is as follows: 'It was moved and seconded that banks in each county shall be assessed on their aggregate value to be ascertained by adding together the capital, surplus and undivided profits as shown by their sworn statements made on the 20th day of February, 1912, subject to such statements as may be shown under oath, less the amount of real estate assessed separately in the name of the bank on the first day of January, 1912, and less the amount of exempted bonds held by them on January 1st, 1912; and that the county assessors are hereby instructed in each and every county to correct the bank assessments to conform to this resolution.' In case the banks refuse to give you this statement, if you will look in the files of your local papers shortly after February 20th, you will be able to find their published statements. Very respectfully, [Signed] Leo Meyer, State Auditor. ORR|S."

And the valuation of the property of the plaintiff in error was accordingly placed at its actual cash value, and the levy made thereon for the year 1912. It also appears that the county clerk had not attached his warrant to the tax rolls at the time this action was commenced; that the value of the plaintiff's property was increased from 75 per cent to 100 per cent of its actual cash value without actual notice to plaintiff or opportunity to be heard. Plaintiff prayed that the collection of said assessment, to the extent of 25 per cent thereof, be enjoined, and for such other general and special relief as in equity and law plaintiff may be entitled. From a judgment denying an injunction, plaintiff appeals.

Plaintiff contends, first, that the county treasurer was without authority to proceed to collect the taxes, in the absence

of a warrant from the county clerk so to do.   Section 5631, St. Okla. 1893, was a law of the territory and state, requiring the county clerk to attach to the tax list and rolls his warrant authorizing the treasurer to collect all taxes therein levied, etc. It has been frequently held that the failure to attach such warrant to a tax roll leaves the county treasurer without authority to collect the taxes contained in such roll.   When that law was in effect, the county clerk was required to make up the rolls and to deliver the same to the county treasurer for collection and to charge him therewith, and such law appears in the Revised Laws of 1910, but, in the act adopting such Revised Laws, there is a specific provision that no law incorporated in the Revised Laws of 1910 shall be construed to repeal any act of the Legislature enacted subsequent to the adjournment of the Extraordinary Session of the Legislature which convened in January, 1910.   Chapter 152, Sess. Laws 1911, creates the office of county assessor, prescribing his qualifications and duties, and section 13 thereof provides:

"The county excise board shall certify all levies to the assessor and he shall proceed, on receipt of same, to make out the tax rolls with complete abstract, showing the total amount of personal, real and corporation taxes, as now provided by law, and when complete he shall file same, with the county treasurer, not later than October first, and a true and correct abstract of same with the county clerk, and the county clerk shall charge the county treasurer with the amount contained in said abstract."

Under this act the necessity of the county clerk attaching his warrant to the tax rolls no longer exists.   The clerk has nothing to do with the preparation of the rolls.   His sole duty is to file the copy furnished him by the assessor and to charge the county treasurer with the amount of taxes entered on said rolls.   The act of 1911 is a revising statute.   It outlines a complete, yet different, system of levying and collecting taxes.

"It is a familiar and well-settled rule that a subsequent statute revising the subject-matter of the former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must operate to repeal the former." (36 Cyc. 1079.)

See, also, *Smock v. Farmers' Union Bank,* 22 Okla. 825, 98 Pac. 945.

"This rule does not rest strictly upon the ground of repeal by implication, but upon the principle that when the Legislature makes a revision of a particular statute, and frames a new statute upon the subject-matter, and from the framework of the act it is apparent that the Legislature designed a complete scheme for the matter, it is a legislative declaration that whatever is embraced in the new law shall prevail, and whatever is excluded is discarded.   It is decisive evidence of an intention to prescribe the provisions mentioned in the latter act as the only ones on that subject which shall be obligatory."   (Note 36 Cyc. 1080, citing *Mack v. Jastro,* 126 Cal. 130, 58 Pac. 372; *State v. Conkliney,* 19 Cal. 501; *People v. Thornton,* 186 Ill. 162, 57 N. E. 841; *Roche v. Jersey City,* 40 N. J. Law, 257; *Bracken v. Smith,* 39 N. J. Eq. 169.)

.Plaintiff's second contention is that the record shows an intentional discrimination, thereby placing an unequal burden on the plaintiff.   Section 273, Williams' Ann. Const. Okla., provides:

"All property which may ·be taxed *ad valorem* shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale; and any officer, or other person authorized to assess values, or subjects, for taxation, who shall commit any willful error in the performance of his duty, shall be deemed guilty of malfeasance, and upon conviction thereof shall forfeit his office, and be otherwise punished as may be provided by law."

The plaintiff in error was presumed and no doubt did know the law, and it was required to render · its property for taxation at its fair cash value, and the record in this case shows that this plaintiff knowingly and intentionally ascertained the cash value of its property, and then deducted therefrom 25 per cent, and returned only 75 per cent thereof to the county assessor for purposes of taxation; that it not only sought to evade the law, but to escape one-fourth of its just share and burden of taxation; that it and the board of county commissioners of Grady county purposely and intentionally sought to have the taxable property of plaintiff, as well as the other property in that county, returned for taxation at three-fourths of its value.   It subse-

quently developed that, in the process of equalization by the state board, the property of this plaintiff in error was placed upon the tax rolls at its fair cash value, while all other personal property in Grady county, if the testimony of these witnesses is correct, was placed upon said rolls at about 75 per cent. of its actual value. Plaintiff knew that all the property in the state was required, under the Constitution, to be returned for purposes of taxation at its fair cash value, and yet it was, with full knowledge of the facts, a party to this transaction, whereby, through its county commissioners, it sought to have Grady county property, including its own, escape one-fourth of the state taxes. It is in no position to complain if a part of the taxpayers of that county profited by this transaction, while it failed. The maxim that "he who comes into equity must do so with clean hands" applies with full force in this case. There is no presumption or reason for assumption that any other county in this state pursued the same tactics as Grady county, and to grant the relief asked for by the plaintiff, while it might have the effect of placing it upon an equality with other taxpayers in Grady county, at the same time it would have the effect of discriminating against the taxpayers in the other counties of this state, and the aid of this court cannot be invoked to bring about that result.

Plaintiff's third contention is that the taxable value of plaintiff's property was increased without any notice or opportunity to be heard; and, fourth, that its property was assessed as of February 20th, when the law requires it to be assessed as of January 1st, and that the undisputed evidence shows that the basis of the assessment would place it above its real value of January 1st. We have carefully read the excerpts from the record quoted in plaintiff's brief, and have also examined the record, and are unable to find any testimony to the effect that the valuation placed upon plaintiff's property, as extended upon the tax rolls, exceeded what the fair cash value of said property was on January 1, 1912. The proof does not show that plaintiff bank had no notice of the raise in its valuation for purposes of taxation. Its president testifies that he had no knowledge

of the change, but other officers of the bank may have had, and are presumed to have had, such notice, in the absence of proof to the contrary.

There is no equity in this case. The judgment of the trial court is affirmed.

All the Justices concur, except HAYES, C. J., who concurs in the conclusion reached, affirming the judgment of the trial court, but does not concur in all the reasoning by which the decision is reached.